## J. H. DAY *v*. ROBERT L. BURGESS *et al.*

### (*Jackson.* April Term, 1918.)

1. **CURTESY. Essentials.**
The requisites to a tenancy by the curtesy are marriage, seisin of
the wife, birth of a living child capable of inheriting, though
it may afterwards die, and death of the wife in the lifetime
of the husband. (*Post, p.* 562.)

Acts cited and construed:  Acts 1913, ch. 26.

Code cited and construed:  Sec. 4249a(T.-S.).

2. **CURTESY. "Curtesy initiate." "Curtesy consummate." Com-
mon law.**
At common law, tenancy by curtesy initiate was an estate which
became vested at the birth of issue, becoming an estate of the
curtesy proper or consummate at the death of the wife before
that of the husband, and had no basis in natural or moral right.
(*Post, p.* 562.)

Case cited and distinguished:  Billings v. Baker, 15 How. Prac.
(N. Y.), 525; Bryant v. Freeman, L. R. A. 1915D., 1004; Stewart
v. Ross, 50 Miss., 776;  McNeer v. McNeer, 142 Ill., 388;  Beach
v. Miller, 51 Ill., 206;  Martin v. Robson, 65 Ill., 129.

Acts cited and construed:  Acts 1849-50, ch. 36  (T.-S.).

3. **CURTESY. Rights of husband. Curtesy initiate.**
In view of Thompson-Shannon Code, section 4234, preventing
alienation by the husband of the wife's realty without her
joining, and section 4239, exempting rents of the wife's realty
from seizure for the husband's debts, but providing that such
statutes should not interfere with the husband's curtesy initiate,
such estate is not entirely destroyed, but merely reduced from
a vested estate to a contingent right, since section 4239 refers
to curtesy consummate. (*Post, p.* 567.)

Code cited and construed:  Sec. 4239(T.-S.).

4. **CURTESY. Estate by curtesy initiate.**

Though a child was born alive before change in character of curtesy initiate, a statute materially changing such estate applies to all property acquired by the wife subsequent to its enactment. (*Post, p.* 569.)

Acts cited and construed: Acts 1879, ch. 141.

Cases cited and approved: Hathon v. Lyon, 2 Mich., 93; Tong v. Marvin, 15 Mich., 60; Clarke v. McCreary, 12 S. & M., 347; Thurber v. Townsend, 22 N. Y., 517; Allen v. Hanks, 136 U. S., 307; Taylor v. Taylor, 80 Tenn., 490; Baker's Ex'rs. v. Kilgore, 145 U. S., 487; Parlow v. Turner, 132 Tenn., 339.

Case cited and distinguished: Travis v. Sitz, 135 Tenn., 156.

5. **CONSTITUTIONAL LAW: Curtesy. Vested rights. Statute.**

Where the husband at the effective date of the Married Woman's Emancipation Act (Thompson-Shannon Code, section 4249a) had only an estate by the curtesy initiate, which was not a vested right, since his wife was then living, the legislature could pass such act which prevented the accrual of the curtesy consummate on the wife's death. (*Post, p.* 571.)

Case cited and approved: Baker v. Dew, 133 Tenn., 126.

FROM MADISON.

Appeal from the Chancery Court of Madison County.—J. W. Ross, Chancellor.

J. M. Troutt, L. McCoy and W. H. Fisher, for appellant.

Bond & Bond and W. G. Timberlake, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

J. H. Day filed the bill of complaint against the devisees, executors, and trustees named in the will of his wife, asserting his right to an estate of a tenant by the curtesy in three parcels of real estate, including the Southern Hotel property, in the city of Jackson, of the aggregate value of above $250,000. The will was dated July 6, 1914, and Mrs. Day died July 12, 1914.

It is admitted that a child, the fruit of the marriage, was born in 1874 and died in early infancy. The real estate was acquired by Mrs. Day after 1880.

One of the defenses of the devisees is that since the Married Woman's Emancipation Act of 1913, chapter 26 (Thompson's Shannon's Code, section 4249a), went into effect, it is competent for a married woman by disposing of her real estate by will to bar the accrual of curtesy to her husband at her death. The contention in behalf of complainant, the husband, is that at the birth of said child an estate by the curtesy vested in him, and that it was not within the power of the legislature by any subsequent enactment to deprive him thereof.

Thus there is for the first time presented for decision the effect of the act of 1913 upon curtesy rights of husbands in property of which their wives die seised.

The act referred provides that married women are fully emancipated from all disability on account

139 Tenn.—36

of coverture; and the common law as to the disabilities of married women, and its effect on the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, and that a married woman shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of all property in possession, and to bind herself personally, as if she were not married.

Four things are requisite to an estate of tenancy by the curtesy: (a) Marriage; (b) seizure of the wife; (c) birth of a child alive, capable of inheriting from the mother, though it may afterwards die; and (d) the death of the wife in the lifetime of the husband.

Tenancy by the curtesy initiate, at common law, was an estate which became vested at the birth of issue, and became an estate of the curtesy, proper or consummate, at the death of the wife before that of the husband. It was held to be an estate distinct from that of the wife, alienable by the husband and subject to execution for his debts, and giving to him control of the profits from the wife's lands.

It is said that the curtesy by the laws of England was given the husband, in part, for the purpose of aiding him in supporting and educating the issue of the marriage. That this was a minor consideration, however, is shown by the fact that continued existence of the issue after birth was not necessary to raise or to

support the estate.  The early writers on the common law disclose that a deeper reason lay in the feudal system which obtained in England in early times, and which affected real property in so many ways.

"The husband, having been dignified by having an interest in lands, was bound to do homage to his superior lord; the estate being once vested in him, it was the policy of the feudal system not to suffer it to determine during the life of the husband, as otherwise the lord might lose the homage that was due from the land.  To this estate the husband never had any natural right.  Bacon's Abridgement, 'Tenancy by the Curtesy.'

"Sir J. Jekyl says: 'This estate has no moral foundation to support it.'  Greenleaf's Cruise, tit. 5, section 3.  Crabb, an English writer, says: 'The term "curtesy" is derived from "courtesie," Latin "curialitas," to signify suavity or urbanity, to denote that the custom sprung from favor to the husband, rather than from any right.'  By thus becoming the vassal or tenant of his superior lord, he was permitted, 'by the curtesy of England,' to attend his lord's court, or curtis (as it was called), and to do him homage, by reason of having become the husband of a wife who had died possessed of an estate in lands after issue born.  Such were the reasons for the introduction of such a title to land into the laws of England." *Billings* v. *Baker,* 15 How. Prac. (N. Y.), 525; Id., 28 Barb. (N. Y.), 343.

Not only did the rule fail to find basis on natural or moral right; the estate, introduced into the mother country from Normandy, for the above-recited reasons, could not long stand in full virtue as a thing that harmonized with the principles of American democracy, so that, after a few generations of reverence for the ancient rule, the legislatures of this country began to abolish curtesy initiate entirely, or to deprive that particular tenancy of some of its more rigorous features, until now it stands greatly and essentially modified, or has been abolished absolutely in many States.

Features at first thus stripped from the estate initiate were the right of the husband, as tenant, to sell and transfer the realty of the wife and the right of his creditors to sell it under execution for his debts. As applied to curtesy initiate, the common-law rule worked a deprivation of the wife of the use of her own property during the life of her husband, and the wonder is that the rank injustice of it had to call so long for remedy at the hands of chivalrous legislators of America.

In all, or nearly all, of the States statutes have been passed enlarging the rights and powers of married women in respect to their real property. In many instances this is done by prohibiting the sale by the husband of his wife's realty without her joining in the conveyance, and protecting the property from levy and sale under judgment or decree against the husband. We have such a statute in Acts 1849-50, chapter 36 (Thompson's Shannon's Code, section 4234),

Decisions are not entirely uniform in the several jurisdictions as to the effect of such a statute upon the common-law estate by the curtesy initiate. The annotator of our case of *Bryant* v. *Freeman,* L. R. A. 1915D, 1004, says:

"Probably a majority of the courts hold that all the attributes of an estate by the curtesy initiate have been destroyed by the statutes, so the estate itself no longer exists, but that the estate by the curtesy consummate is not destroyed, since the statutes do not destroy the attributes of the latter estate, and do not expressly destroy or abolish the estate."

The courts in some jurisdictions hold that while estates of tenancy by the curtesy initiate are not abolished or wholly destroyed by such statutes they are so essentially modified and changed thereby as that they have lost their vested nature and become mere contingent rights or interests. *Stewart* v. *Ross,* 50 Miss., 776; *McNeer* v. *McNeer,* 142 Ill., 388, 32 N. E., 681, 19 L. R. A., 256.

In the last-named case, so much relied upon by all counsel in the instant case, it is said, speaking of an early Illinois act:

"Under the act, the husband as tenant by the curtesy initiate had no control over his wife's lands. His interest as such tenant could not be conveyed by him, nor was it subject to execution. If the wife died seised of her lands, he was entitled to them as tenant by the curtesy. His estate became consummate upon her death, if she had not disposed of her real estate during her life. So long as she lived, however, his interest

in her land lacked those elements of property, such as the power of disposition and liability to sale on execution, which had formerly given it the character of a vested estate.   .   .   .

"In speaking of the estate of tenancy by the curtesy as affected by the act of 1861, we said,   .   .   . in *Beach* v. *Miller,* 51 Ill., 206, 2 Am. Rep., 290: 'The husband's right to the curtesy is contingent, and until it vests he has no present interest in the land.  It does not vest in the husband until the death of the wife;' in *Martin* v. *Robson,* 65 Ill., 129, 16 Am. Rep., 578: 'He (the husband) has now only a modified tenancy by the curtesy, dependent upon a contingency, and no estate vests during the life of the wife.  This is rather a shadowy estate.' "

The further language of the Illinois court may be more clearly understood and applied, if we substitute for the Illinois act of 1874 our act of 1913, and for the act of 1861 our act of 1849-50 in this excerpt:

"When the act of 1874 went into force, Valentine McNeer's interest as tenant by the curtesy initiate had not become consummate by the death of his wife. Therefore, inasmuch as that interest had been acquired under the act and had been so changed and modified by the latter act as to be stripped of the essential elements of a vested estate and had been reduced in character to the condition of the ordinary inchoate right of dower, except that it applied to the whole of Mrs. McNeer's lands instead of one-third thereof, it

follows that such interest was abolished by the act of 1874.''

We are of opinion that this is the soundest conception of the situation produced by such legislation; that is, to treat the curtesy initiate as not abolished or entirely destroyed, but as reduced from an estate that is vested to a right that is contingent. In this view the husband has not an estate, but more properly speaking a *status* entitling him to an estate by the curtesy consummate on the contingency that his wife dies. The precedent birth of a living child then becomes a mere condition of the vestiture of the estate by the curtesy consummate; and it is no longer the factor which creates in the husband a vested estate by the curtesy initiate.

We need not, however, hold that the act of 1849-50, of itself and alone, had this effect. It is not all of our legislation that has pared down the power. or rights that a husband exercised, under the common law, as tenant by the curtesy initiate. One of these rights was that of enjoying the real estate of the wife after the birth of a child capable of inheriting. It is said that while this right at marriage and before issue inhered in the husband *jure uxoris,* it also became at the birth of a child his own right as tenant by the curtesy initiate. ''There is no difference in the rights of tenant by the marital right (*jure uxoris*) and tenant by the curtesy initiate during the life of the wife,'' at common law. Throughout that period after birth of a child the two rights, denominated estates at com-

mon law, ran concurrently and with a common func-
tioning, the earlier attaching *jure uxoris* not being ad-
ded to or diminished when curtesy initiate arose.   The
latter, as said, was an estate not in right of the wife,
but in right of the husband himself, and ripened in-
to curtesy consummate on the death of the wife in
the lifetime of the husband.

In relation to this doubly based right of enjoyment
of the rents, issues, and profits of the wife's real estate
during coverture, the following act was passed in 1879
(Thompson's Shannon's Code, section 4239):

"The rents and profits of any property or estate of
a married woman, which she owns or may become
seized or possessed of, either by purchase, devise,
gift, or inheritance, as a separate estate, or for years,
or for life, or as a fee simple estate, shall in no man-
ner be subject to the debts or contracts of her hus-
band, except by her consent, obtained in writing." But
this provision "shall in no manner interfere with the
husband's tenancy by the curtesy."

The last sentence, "this provision shall in no man-
ner interfere with the husband's tenancy by the curte-
sy," refers to that tenancy proper, or consummate.   It
could not have reference to curtesy initiate because
the terms of the act itself necessarily interfered with
and further modified the rights of such a tenant as
they were at common law.   8 R. C. L., p. 403.

It is true that the statute last quoted was passed
five years after the birth of the child, Florence Day;
but all the real estate in question here was acquired

after 1879. May the provisions of that statute be considered as having tendency to further strip the common-law estate of curtesy initiate of its absolute or vested character, and bring it to the plane of a contingent or inchoate interest in the husband, in the lands so acquired by Mrs. Day?

If, though a child has been born alive at a time when tenancy by the curtesy initiate, as a vested estate, has not been abolished or vitally changed as to nature, the wife has not acquired or become seised of any real property to which curtesy could attach, and thereafter a statute is enacted which gives the wife power of control or disposition of her property or takes away the husband's common-law right of control, as such tenant, in respects which seriously impair it, then the last-named statute becomes applicable to all property which the wife may acquire subsequent to its enactment. *Hathon* v. *Lyon,* 2 Mich., 93; *Tong* v. *Marvin,* 15 Mich., 60; *Clarke* v. *McCreary,* 12 Smedes & M., 347; *Thurber* v. *Townsend,* 22 N. Y., 517; *Allen* v. *Hanks,* 136 U. S., 309, 10 Sup. Ct., 961, 34 L. Ed., 414. See, also, *Taylor* v. *Taylor,* 12 Lea (80 Tenn.), 490; *Baker's Ex'rs* v. *Kilgore,* 145 U. S., 487, 12 Sup. Ct., 943, 36 L. Ed., 786.

When, therefore, we look as we may to both statutes, the act of 1879 along with the act of 1849-50, we think it still more manifest that the legislative intent was to leave tenancy by the curtesy initiate shorn of all the essential elements of a vested estate, as already indicated.

It was held in *Parlow* v. *Turner,* 132 Tenn., 339, 178 S. W., 766, that the common-law estate *jure uxoris* had been so materially modified by these statutes that only a bare privilege was left to the husband in respect of the rents and profits of the wife's lands—to rent out her lands and to collect the rents for the benefit of the family, in the capacity of governor of the family, but for the family and not for himself individually. From what has been said above, it is clear that the same statutes operated upon the common-law estate of the curtesy initiate in like manner.  In *Parlow* v. *Turner,* the *jure uxoris* was said to be, since the act of 1879, one of a contingent nature, as relates to future accruing rents; and by parity of reasoning the same thing is true of the right formerly incident to the curtesy initiate, in the same regard.

In *Travis* v. *Sitz,* 135 Tenn., 156, 168, 185 S. W., 1075, L. R. A., 1917A, 671, it was said on this point:

"By Acts 1879, chapter 141, the rights of the husband in the wife's land, as tenant by the curtesy initiate, were so reduced that he was left only the privilege of renting out the land as governor of the family, and of collecting rents for the benefit of the family."

As was further said in *Travis* v. *Sitz,* applicable in this case on the effect of both of the above statutes to exclude the husband's right as tenant by the curtesy initiate:

"It is difficult to conceive of the husband (without the intervention of some form of trust) owning property which is not at all liable for his debts, nor subject

to his contractual powers.   So by exclusion of the legal incidents that attend the right of property it is clear on principle that the language could have no other meaning than an intention to exclude the husband.''

Holding as we do that there was at the time no vested estate of curtesy initiate in complainant, it was competent for the legislature by the act of 1913 to provide for his deprivation of all contingent rights to curtesy, as it did by that act.   An estate of curtesy consummate had not attached in his favor before that act. Mrs. Day's death, which alone could cause that estate consummate to vest, was subsequent to the date when that act went into effect, January 1, 1914.

The act of 1913 (chapter 26) gave the wife power to dispose of her real estate by will, as if she were a *feme sole,* and, therefore, thereby to defeat the accrual to the husband of an estate by the curtesy consummate at her death.   *Parlow* v. *Turner,* supra; *Baker* v. *Dew,* 133 Tenn., 126, 135, 179 S. W., 645.

The chancellor reached the same result, by a ruling upon another question which it is unnecessary to treat of, since the rulings on the points discussed above dispose of the whole case.

Affirmed.