MATTIE E. PATTISON *v.* E. L. BAKER *et al.*

(*Knoxville.* September Term, 1923.)

HUSBAND AND WIFE.  Husband held not entitled to collect rents of wife's property; "curtesy."

Under Public Acts 1913, chapter 26, and Public Acts 1919, chapter 126, removing disabilities of coverture from married women without affecting the husband's right of "curtesy," a husband has no right in or control over the rents accruing from his wife's land except with her consent, under the doctrine of curtesy or of *jure uxoris;* the word "curtesy" within the statute having reference to tenancy by the curtesy proper or consummate, and not to tenancy by the curtesy initiate.

Acts cited and construed: Acts 1913, ch. 26;  Acts 1919, ch. 126; Acts 1849-50, ch. 36;  Acts 1879, ch. 14.

Cases cited and approved:  Lucas v. Rickerich, 69 Tenn., 726; Taylor v. Taylor, 80 Tenn., 490;  Baker's Ex'rs. v. Kilgore, 145 U. S., 487;  Ables v. Ables, 86 Tenn., 333;  Parlow v. Turner, 132 Tenn., 346;  Day v. Burgess, 139 Tenn., 559;  Tellico Bank & Trust Co. v. Loomis, 147 Tenn., 162.

Case cited and distinguished:  Travis v. Sitz, 135 Tenn., 156.

Code cited and construed:  Sec. 4234 (S.).

FROM KNOX.

Appeal from the Chancery Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. CHAS. HAYS BROWN, Chancellor.

LUCKY, JONES & ANDREWS, for Pattison.

GREEN, WEBB & COWAN, for Baker and others.

MR. JUSTICE HALL delivered the opinion of the Court.

Complainant, Mattie E. Pattison, is the wife of defendant, Thomas W. Pattison. They were married in 1888, and lived together as man and wife in the city of Knoxville, Tenn., until some time prior to the filing of the bill in this cause, which was on April 7, 1923, when complainant withdrew from her husband and took up her residence elsewhere. Six children were born to complainant and defendant as a result of their marriage; the oldest being thirty-three years of age and the youngest fifteen years of age. All of said children reside with complainant's husband except one.

Complainant is the owner in fee of four houses and lots situated on Emerald avenue in the city of Knoxville; these lots having been conveyed to her in 1894 by the deed of one Charles L. Larew.

Defendant Pattison, as head and governor of the family, has always collected the rents from said property and used the same in its upkeep, and for the support of the family.

Shortly before the bill in this cause was filed complainant gave notice to the tenants occupying said property not to pay any further rents to her husband, but to pay them to her. She also notified her husband not to collect any further rents from said property.

Upon the refusal of the defendant Pattison and his codefendants to carry out her instructions in this respect,

she filed the present bill to enjoin her husband from making further collections of the rents from the tenants occupying the property, and sought a recovery against both her husband and the tenants of her property for rents paid to her husband by said tenants after said notice.

Defendants answered the bill. Defendant Pattison denied his wife's right to the rents from her property, claiming that he was entitled to said rents as tenant by the curtesy, as well as by virtue of the doctrine of *jure uxoris*.

Thereafter the cause was set down for hearing on the bill and answer; there being no fact alleged in complainant's bill controverted by the answers of defendants.

Upon the hearing the chancellor rendered a decree dismissing complainant's bill, being of the opinion that she was not entitled to the relief sought.

From this decree complainant appealed to the court of civil appeals.

That court reversed the decree of the chancellor, holding that defendant Pattison was not entitled to the rents accruing from his wife's property, and was not entitled to collect the same. It was also further held that complainant was entitled to recover from defendants the rent sued for. The temporary injunction, which had theretofore issued against defendants, was made perpetual, and the cause was remanded to the chancery court for a reference as to rents.

Defendants have brought the cause to this court by writ of *certiorari* for review. They have assigned the holding of the court of civil appeals for error.

There is only one question presented by the assignments of error. This is a question of law simply. The question is: Has a husband, under the existing statutes in this State,

148 Tenn.—26

against the will of his wife, under the doctrine of curtesy or of *jure uxoris,* the authority and right to take possession of his wife's property and rent it out, collect the rents, and use them for the support of the family?

Before the passage of the Married Woman's Emancipation Act of 1913, chapter 26, and 1919, chapter 126, the following statutes were passed by the legislature materially modifying the rights acquired at common law by the husband in the wife's land through marriage: The first of these statutes is Acts 1849-50, chapter 36. This act forbade the husband to sell or incumber the wife's land, except by a joint deed executed by the two spouses, the wife joining in the manner prescribed by law for the conveyance of land by married women; also forbidding his interest to be sold under execution during the life of the wife, and forbidding the dispossession of the husband and wife. Shannon's Code, section 4234.

It was held, however, that, notwithstanding this statute, the rents of the wife's land could be seized and appropiated to the husband's debts. *Lucas* v. *Rickerich,* 1 Lea, 726. The theory of the decision was that the common-law estate or freehold in his wife's general estate was not by the statute referred to converted into a separate estate; therefore, his rights to the rents remained unimpaired.

Later, Acts 1879, chapter 141, was passed. This act provided as follows: "The rents and profits of any property or estate of a married woman, which she owns or may become seized or possessed of, . . . shall in no manner be subject to the debts or contracts of her husband, except by her consent, obtained in writing. This shall in

no manner interfere with the husband's tenancy by the curtesy." Shanon's Code, section 4239.

An attack was made on this statute in the case of *Taylor* v. *Taylor*, 12 Lea, 490, on the ground that it interfered with the husband's vested estate which he had acquired in the wife's land by virtue of the marriage, or what had been left of that estate by the statute of 1849-50, supra. It was held that the right of the husband to the profits of the wife's land was a contingent one, as applied to each successive year's crop, dependent, not only upon the continuance of his *status* as husband, the continuance of the wife's ownership of the land, the absence of a decree of settlement on her by a court of equity, but also upon the actual future production of a crop, and that, before the crop had been grown, the legislature might intervene, and either qualify or destroy his interest in such future crops.

This act was subsequently attacked as being in violation of the Federal Constitution, both on the ground that it interfered with vested rights, and that it impaired the obligation of a contract.

This court sustained the statute as a valid enactment. Subsequently the case was taken to the supreme court of the United States on writ of error, and there the judgment of this court was affirmed. *Baker's Ex'rs v. Kilgore,* 145 U. S., 487, 12 Sup. Ct., 943, 36 L. Ed., 786.

This act was again considered in the case of *Ables* v. *Ables,* 86 Tenn., 333, 9 S. W., 692. In that case it was held that while the rents and profits of the wife's land could not, under the act referred to, be subjected to the claim of the husband's creditors, and while he could not contract them away, without the consent of the wife in Writing; yet as governor of the family, the head of the

house, he had the right to rent out her land or to collect the rents for the benefit of the family.

It was said, in *Parlow* v. *Turner*, 132 Tenn., ·346, 178 S. W., 766, that this bare privilege was all that the act of 1879 left to the husband in respect of the rents and profits of the wife's land, aside from such rights as he hight have as tenant by the curtesy, and that this was the *status* when Acts 1913, chapter 36, was passed.

That case did not present any question of curtesy, but only the husband's right to collect the rents accruing from his wife's land after the act of 1913 went into effect. It was held that he did not have such right, and that the tenant was within his rights when he paid the money to the wife.

It was said in *Day* v. *Burgess*, 139 Tenn., 559, 202 S. W., 911, L. R. A., 1918E, 692, that four things are requisite to an estate of tenancy by the curtesy: (a) Marriage; (b) seizure of the wife; (c) birth of a child alive, capable of inheriting from the mother, though it may afterwards die; and (d) the death of the wife in the lifetime of the husband.

Also that tenancy by the curtesy initiate, at common law, was an estate which became vested at the birth of issue, and became the estate of the curtesy proper or consummate, at the death of the wife before that of the husband. It was held to be an estate distinct from that of the wife, alienable by the husband and subject to execution for his debts, and giving to him control of the profits in the wife's land.

It was further held in that case that, in view of Acts 1849-50, chapter 36, preventing alienation by the husband of the wife's land without her joining, and Act 1879,

chapter 141, exempting rents of the wife's land from seizure for the husband's debts, but providing that such statutes should not interfere with the husband's tenancy by the curtesy, the curtesy initiate was not abolished or entirely destroyed, but was reduced from an estate that is vested to a right that is contingent; that the husband has not an estate, but more properly speaking a status entitling him to an estate by the curtesy consummate on the contingency that his wife dies; that the precedent birth of a living child then becomes a mere condition of the vestiture of the estate by the curtesy consummate; and it is no longer a factor which creates in the husband a vested estate by the curtesy initiate.

It was also held in that case that the last sentence of the act of 1879—"This [provision] shall in no manner interfere with the husband's tenancy by the curtesy"—referred to that tenancy proper, or consummate; that it could not have reference to curtesy initiate because the terms of the act itself necessarily interfered with and further modified the rights of such a tenant as they were at common law.

In *Travis* v. *Sitz*, 135 Tenn., 156, 185 S. W., 1075, L. R. A., 1917A, 671, it was said:

"By Acts 1879, chapter 141, the rights of the husband in the wife's land, as tenant by the curtesy initiate, were so reduced that he was left only the privilege of renting out the land as governor of the family, and of collecting the rents for the benefit of the family."

It was held in *Day* v. *Burgess,* supra, that the Married Woman's Emancipation Act of 1913, deprived the husband of all contingent rights to curtesy in the wife's land, and gave the wife power to dispose of her real estate, as

if she were a *feme sole,* and thereby defeated the accrual to the husband of an estate by the curtesy consummate at her death.

The act of 1913 was supplanted by Acts 1919, chapter 126, which is identical with the provisions of the Act of 1913, with the exceptions noted in the second section thereof. Section 2 provides:

"That nothing in this act shall be construed as abolishing tenancies by the entirety, and as affecting the husband's right of curtesy."

In *Tellico Bank & Trust Co.* v. *Loomis,* 147 Tenn., 162, 246 S. W., 21, it was held that it was the intention of the act to deprive the husband of all of his common-law rights with respect to the wife's property during coverture; that it was intended that she should hold such property during coverture just as if she were not married, and the only way that the husband can acquire her property during coverture is by purchase or gift, just as he might acquire the property of a stranger; that he is not entitled to appropriate her money, without her consent, nor to reduce her choses in action to his possession by virtue of his marital rights during coverture; that such rights are destroyed by this emancipation statute.

Therefore it follows that the husband has no right in or control over the rents accruing from his wife's land, except with her consent. The provision in the act of 1919— "but this provision shall in no manner interfere with the husbands tenancy by the curtesy"—refers to tenancy by the curtesy proper or consummate, and not to tenancy by the curtesy initiate, as was held to be true of the same provision in the act of 1879 in *Day* v. *Burgess,* supra.

It results that the judgment of the court of civil appeals will be affirmed, with costs.