## E. T. COBB & WIFE, v. T. A. SANDERS, et al.

Western Section.   November 30, 1925.

No Petition for Certiorari was filed.

1. **Husband and wife. Married woman's emancipation act destroyed estates by entireties.**
   The Married Woman's Emancipation Act removing disabilities of coverture, being Chapter 26 of the Acts of 1913, effective January 1, 1914, has been construed to destroy estates by entireties created by deeds to husband and wife after the Act went into effect.

2. **Deeds.. A deed purporting to convey all the estate conveys only such interest as grantor then has.**
   When a party attempted to convey the entire estate but at the time he was possessed only of a one-half interest in the fee and courtesy right, held the deed conveyed all the right that he had.

3. **Covenants. Covenant of seizin does not run with the land.**
   The covenant of seizin is personal, and if broken at all, is broken at the time the conveyance is made, and does not enure to the alienee of the grantee, and the grantee alone would have a right to maintain an action either for a rescission, or for a recovery of damages for the breach of the covenants.

4. **Covenants. Covenant of seizin may be recovered on by subsequent grantee if there is a privity between the parties.**
   Where grantee gave notes for purchase price and sold to third person who assumed the notes and made payments on the same, and the grantor accepted the payments and accepted the third party instead of the grantee and ceased to look to the grantee for payment, held privity was thus established which would permit a suit on grantor's covenant of seizin.

5. **Covenants. Covenant of warranty of title is a real covenant running with the land.**
   A covenant of warranty is a real covenant running with the land and grantees of the covenantee may sue thereon.

6. **Covenants. Warranty of title not breached until eviction actual or implied.**
   There can not be an action for the breach of the covenant of warranty of title until there is an eviction either actual or implied and in this state the eviction may be implied.

7. **Covenants. Covenant of warranty not broken until eviction by paramount title holder.**
   Where grantee learned of outstanding title and refused to make further payments on purchase price and the grantor foreclosed her mortgage and ousted the grantee, held not an eviction such as to sustain action on warranty of title.

**8. Curtesy. Curtesy was not destroyed by the Married Woman's Emancipation Act.**

This Act did not destroy estates by curtsey initiate but the estate by curtesy initiate is shorn of any vested estate to the husband, as the wife could by a conveyance or by will defeat the estate, and when she fails to dispose of the property by deed or by will the estate by curtesy proper or consummate attaches to the husband upon her death.

**9. Covenants. Measure of damages for breach of covenant of seizin.**

The weight of authority seems to be that the recovery f the breach of the covenant of seizin should be the amount actually paid by the covenantee, plus the interest thereon, and does not warrant a recovery for improvements, or for enhanced value of the property.

Where a party had the use and enjoyment of the property the proper measure of damages, held to be a recovery of the actual amount paid with interest and taxes, and the costs of necessary repairs minus the amount of rental value during the time complainants were in possession.

Appeal from the Chancery Court, Shelby County; Hon. I. H. Peres, Chancellor.

Modified and affirmed.

F. S. Elgin, for appellant.

Crabtree & Crabtree, for appellee.

SENTER, J. The original bill was filed in this cause by E. T. Cobb and wife, against T. A. Sanders and wife, and Mrs. Maggie Kinney, seeking to have a rescission of deed executed on July 6, 1921, by T. A. Sanders and wife to E. T. Cobb and wife, and to be discharged from the payment of the deferred payment notes executed by T. A. Sanders and wife to Mrs. Maggie Kinney, in the purchase of a house and lot; and seeking to recover against the defendants, Sanders and wife, and Mrs. Maggie Kinney, the amount paid by complainant on the property.

A demurrer to the bill was filed by defendant, Mrs. Kinney, and also an answer. The demurrer was overruled by the court. Defendants T. A. Sanders and wife also answered the bill, and made their answer a cross-bill against Mrs. Maggie Kinney. A demurrer was likewise filed by Mrs. Kinney to the cross-bill.

The cause was heard by the Chancellor upon the whole record, including all the pleadings and the stipulation of parties as to all the material facts, except the amount in value of certain improvements placed upon the premises by the complainant after they had taken possession of same under their deed, and the Chancellor denied a rescission of the contract, but granted to complainants a recovery against the defendants for the amount paid the complainants on the property, including one-half of the proven value of the improvements, or rather one-half the amount expended by complainant on the property for improvements, plus interest, less one-half of the rental value of the property for the time that complainants were in possession of the same.

From the action of the court in overruling the demurrer of defendant, Mrs. Kinney, to the original bill, and in decreeing a judgment against her on the basis above stated, the defendant Mrs. Kinney, has appealed to this court and has assigned errors.

The first assignment of error goes to the action of the court in disallowing the demurrer of the defendant, Mrs. Kinney. The second assignment of error is to the action of the court, after having overruled the demurrer, in holding, upon the hearing of the cause, that defendant, Mrs. Kinney, was liable to complainants on account of, and as for a breach of the covenants of seizin and warranty.

The third assignment of error is directed to the action of the Chancellor in holding defendant, Mrs. Kinney, liable to complainants Cobb and wife, for purchase money, interest, taxes, and improvements in the aggregate sum of $1,641.88, and for only allowing a credit on this aggregate sum for the one-half of the rental value of the property instead of the whole rental value.

To a proper consideration and determination of these assignments of error a statement of the facts, circumstances and transactions between the parties becomes necessary.

It appears that the property in controversy was conveyed on August 25, 1914, by James Gillian and wife, to Vincinzo Solomito and wife, Angiolina Solomito. This deed is not contained in the transcript, but is made the subject of a stipulation among the parties (as are all the other deeds and trust deeds executed by the parties). That following the execution and delivery of said deed from Gillian and wife to Solomito and wife, and prior to August 7, 1916, Angiolina Solomito died, leaving four minor children. (The date of the death of Angiolina Solomito does not appear in the record.) On August 7, 1916, Vincinozo Solomito conveyed the property by warranty deed to Mrs. Maggie Kinney, a widow. (The stipulations simply recite the fact of the conveyance of this property by "warranty deed.)" On March 28, 1919, Mrs. Kinney conveyed the property to T. A. Sanders and wife, for the consideration of $4,000, $500 of which was cash, and the balance represented by 140 notes, each for the sum of $25 and payable monthly, beginning May 1, 1919, with interest at the rate of 6%. (The stipulation does not set out the covenants contained in the deed, but we assume that this deed of conveyance contained the usual covenants of seizin and possession, and warranty of title.) On the same date T. A. Sanders and wife executed a trust deed on the property to Ike W. Crabtree, Trustee, to secure the said purchase money notes representing the deferred payments. On July 6, 1921, T. A. Sanders and wife conveyed the property to complainants, E. T. Cobb and wife, who paid $50, cash, and

executed notes aggregating $450, we presume payable to T. A. Sanders and wife, and assumed the payments of the unpaid purchase money notes. The stipulation recites that each of said conveyances would be filed as evidence at the trial but we fail to find these conveyances in the transcript of the record.

It further appears from the stipulation that E. T. Cobb and wife took possession of the premises on July 6, 1921, and remained in possession thereof until the 1st day of May, 1924. About January, 1924, complainants E. T. Cobb and wife, had become delinquent in the payment of six of the monthly notes, aggregating $150, which was past due, and that taxes with penalties with interest from the year 1919 to 1923, except State and County taxes for 1921 and City taxes for 1920, were unpaid; that Mrs. Kinney was demanding that Cobb and wife pay the past due notes and the delinquent taxes. Thereupon Cobb and wife made application to a loan company for a loan on the property for an amount sufficient to take up the deferred purchase money notes assumed by complainant and also to pay the delinquent taxes and interest, and this application for the loan was approved by the loan company on condition that complainant's title to the property was clear.

Upon an examination of the title by the loan company, the real state of the title was for the first time disclose. Complainants were advised by the loan company that in order to clear the title a deed would have to be filed from all the heirs of Angiolina Solomito, deceased, to Mrs. Maggie Kinney, with affidavits showing her heirs at law and their ages. Upon receiving this advice from the loan company, Cobb and wife ascertained that the heirs of Angiolina Solomito were minors at the time the investigation was made. The complainants, Cobb and wife, then demanded of Mrs. Maggie Kinney that she perfect their title to the property by eliminating or satisfying the claim of the heirs of Angiolina Solomito.

The stipulation further states that Mrs. Kinney insisted upon complainants Cobb and wife paying the delinquent notes and taxes, which the complainants refused to do and were unwilling to do until their title to the property was perfected. Upon their failure and refusal to pay the delinquent taxes and notes, as demanded by the defendant, Mrs. Kinney, she proceeded to have the Trustee named in the trust deed to foreclose the trust deed by advertising and selling the property, and at which sale the defendant Mrs. Kinney became the purchaser for the consideration of $693.50, and the Trustee executed to her his Trustee's deed to the property. The amount for which the property was sold at the Trustee's sale was applied to the past due notes, and the pro rata satisfaction of unmatured notes.

On the 8th day of April, 1924, defendant Mrs. Kinney by writ of unlawful detainer instituted before a Justice of the Peace, and under the judgment of the Justice of the Peace and a writ of possession ousted the complainants, took charge of the property, collected the rents, and has been in possession of the property since May 1, 1924.

The stipulation further recites that Mrs. Kinney still holds the unpaid purchase-money notes of said T. A. Sanders and wife, the payment of which was assumed by complainants Cobb and wife. The stipulation further recites that Mrs. Kinney knew that complainants, Cobb and wife, had purchased the property, consented to the same and accepted of and from him payments on the notes up to the time she got possession of the property and has not since delivered to the complainants or defendant, Sanders, the unpaid notes.

The stipulation further recites that T. A. Sanders and wife paid Mrs. Kinney $500 cash, and 140 notes of $25 each, aggregating the sum of $3,500; that when Sanders and wife conveyed the property to Cobb and wife he had paid twenty-one of these notes, leaving a balance of $2,975 of the purchase-money notes in the hands of Mrs. Kinney. Complainants Cobb and wife paid to Sanders $500 for his equity and assumed the $2,975 of the unpaid purchase-money notes executed by Sanders and wife to Mrs. Kinney, and that he had paid thirty-one of these $25 notes, amounting to $775, before he discovered the alleged defect in the title, making an aggregate amount of $1,275 paid by complainants on the property.

The stipulation further recites that the rental value of the premises from August 1, 1921, the date on which complainants Cobb and wife took possession, until they were ousted by writ of possession on the 1st day of May, 1925, was $40 per month; that the reasonable value of the property on August 1, 1921, was $3500.00. The stipulation further provides that it is not to interfere with the rights of the parties to introduce proof showing the condition of the property during the possession by Sanders and Cobb, and at the time possession was regained by Mrs. Kinney, or as to the amount, character and value of the improvements, if any, made on the property by any of the parties.

At the hearing of the cause the court decreed that complainants E. T. Cobb and wife were entitled to recover from the defendant Mrs. Kinney, as damages for breach of warranty and seizin, the amount paid by complainants on the purchase price and interest, $1,490.69, one-half of the taxes paid by complainants and interest, $57.94; and one-half of the amount properly proven as expended for material in making improvements, $93.25, in all, $1,641.88, less

one-half of the rental value of the property during the time that the same was held and occupied by complainants, $660, leaving the net amount to which complainants were entitled, $988.88.

The decree of the Chancellor further recites: ''Finding that no fraud entered the transaction, the prayer for relief as for rescission if denied, and the adjustment of the rights of the parties on the above basis is fixed by the court, because the court is of the opinion that the litigation was the result of common error all down the line and that a proper suit by all the parties against the minor heirs of Angiolina Solomito could have cured the trouble on proper proof or a confirmation of sale as for interest of minors.''

The decree of the Chancellor further recites that because of the firmness or stubbornness of the parties in failing to make these minor Solomito children parties, that the costs of the cause be paid one-half by complainants Cobb and wife, 'and one-half by defendant Mrs. Kinney, and judgments were decreed accordingly.

With this statement of the actions and transactions, we will now proceed to a consideration of the assignments of error.

The first question presented is the nature and extent of the estate owned by Vincinzo Solomito at the time of his conveyance of this property to defendant, Mrs. Kinney. It is contended by defendant, Mrs. Kinney, that Solomito, as the surviving husband of his wife, owned the entire estate in this property under the conveyance of James Gillian and wife to Solomito and wife, dated August 25, 1914, the wife having died between August 25, 1914, and August 7, 1916. The Married Woman's Emancipation Act removing disabilities of coverture, being Chapter 26 of the Acts of 1913, effective January 1, 1914, has been construed to destroy estates by entireties created by deeds to husband and wife after the Act went into effect. Gill v. McKinney, 140 Tenn., 558; Kellar v. Kellar, 142 Tenn., 524-5.

Assuming that the deed from Solomito purported to convey the entire estate to defendant, Mrs. Kinney, its effect in law would be to convey only such an estate as he then owned in the property, which was a one-half undivided interest, his wife having died after January 1, 1914, and prior to the date of conveyance, August 7, 1916, and also the estate by curtesy consummate, if he acquired curtesy rights to such of her property as she had not disposed of at the time of her death, and which was not disposed of by a will. This question will be later discussed in this opinion.

The demurrer of defendant, Mrs. Kinney, and also her answer presents the contention that the complainant could not maintain the bill against the defendant, Mrs. Kinney, for the breach of the covenants of seizin, for the reason that the covenants of seizin do not run with the land, as do the covenants of warranty of

title, and that no rights of recovery for a breach of the covenants of seizin could be extended to complainants who were not the immediate vendees of Mrs. Kinney.

"Covenants of seizin, under the general rule in United States, if broken at all, is broken at the instant it is made, and consequently, unless otherwise controlled by statute does not run with the land, nor pass to an assignee." 15 C. J., p. 1246.

In Kinney v. Norton, 57 Tenn., 386, it is said:

"As to the covenants of seizin against encumbrances, and of right to convey, it seems to be settled in the United States by a large preponderance of authority, that these covenants do not run with the land."

In Kincaid v. Brittain, 5 Sneed, 119, it is held "that the covenants of seizin is a covenant, that the vendor has the very estate in quantity and quality he purports to convey, and if untrue is broken at the time made."

In Robinson v. Bierce, 102 Tenn. 437, the same rule is stated.

In 7 R. L., p. 1133, the rule is stated as follows:

"On a question whether a covenant of seizin is personal or real, there is a decided irreconcilable conflict of opinion. But by the great weight of authority in the United States, however, it is a personal covenant and does not run with the land."

If no other question entered into the transaction, and into the consideration, we think it well settled that "the covenant of seizin is personal, and if broken at all, is broken at the time the conveyance is made, and does not enure to the alienee of the grantee, and the grantee alone would have a right to maintain an action either for a rescission or for a recovery of damages for the breach of the covenant."

But it is insisted for complainant that this case does not come within the above-stated rule, for the reason that the immediate vendee of Mrs. Kinney executed certain deferred purchase-money notes, representing the consideration price for this property, and at the same time executed a trust deed on the property to secure the deferred payment notes, and that when the immediate vendee of Mrs. Kinney conveyed this property to complainants, the complainants specifically assumed the payment of all unpaid purchase-money notes executed by Sanders and wife to Mrs. Kinney; that Mrs. Kinney acquiesced in this assumption of the payment of the deferred purchase money by the complainant, by accepting and receiving payment of the same as they became respectively due and payable; that when default had been made she demanded payment of the delinquent notes of the complainant, and that this action and conduct upon her part recognized complainant as her

real debtor, and created privity between complainant and Mrs. Kinney that would entitle the complainant to maintain his action for a breach of the covenants of seizin.

The record discloses that Mrs. Kinney, after the conveyance from Sanders and wife to complainants, received the payments on the deferred purchase-money notes from complainant, and that when the complainant, who had assumed the payment of these notes, became deliquent or in arrears, in meeting the payments, she demanded of complainant the payment of the delinquent notes, and also of the taxes that had become delinquent.

The record does not disclose that she ever at any time after the conveyance from Sanders and wife to complainants, demanded the payment of any of the notes from Sanders and wife, and so far as the record discloses, she looked to complainants for the payment of these deferred purchase-money notes, after the conveyance from Sanders and wife to complainants, and treated him as the real debtor.

It is contended for the defendant, Mrs. Kinney, that she had no other choice except to acquiesce in the conveyance of the property by Sanders and wife to complainants, and that Sanders and wife had the legal right to make the conveyance in the way and manner it was made to complainants without the consent of the defendant, Mrs. Kinney. This does not fully answer the question, because Mrs. Kinney had not lost any right to look to Sanders and wife, the makers of the notes to her, for the payment of the notes. She had the right to sue the original maker on these notes without reference to the fact that complainants had assumed the payment of the notes. Did this constitute such privity as between the original covenantor and the grantee of the original covenantee as would entitle the complainant to be subrogated to the rights of his immediate grantor to maintain an action for a breach of the covenants of seizin. So far as our investigation goes of this question we have been unable to find any direct authorities on this subject. The Chancellor must have reached the conclusion that complainants having assumed the payment of these deferred payment notes, and the defendant, Mrs. Kinney, having acquiesced in the transaction by which complainants became obligated to pay these notes by accepting payments from complainants and demanding the payments on the notes that were delinquent and past due as well as the taxes, etc., entitled the complainants to sue the defendant Mrs. Kinney, on the covenant of seizin made in her deed to defendant Sanders and wife.

As above set forth it is the settled law in this country that covenants of seizin is a covenant in presenti, and is breached, if at all, immediately upon the execution and delivery of the deed,

and that it is a personal covenant to the immediate grantee and does not run with the land.

We are constrained to the opinion that the Chancellor was correct in holding that the covenant of seizin of Mrs. Kinney in her deed to her immediate vendee, Sanders and wife, had been breached, and that the complainant under all the facts and circumstances had become the real debtor to defendant, Mrs. Kinney, on these unpaid purchase-money notes, payment of which he had assumed, and a part of which he had paid, and that the essential privity between complainant and Mrs. Kinney had been thus established. 15 C. J., p. 1260 (Sec. 85).

The next question presented under the assignments of error goes to the action of the Chancellor in holding that there had been a breach of the general warranty of title, and that complainants were entitled to recover of defendant, Mrs. Kinney, for the breach of the warranty.

It is the settled law that a covenant of warranty of title, is a real covenant, running with the land, and for its breach the covenantee or the grantees of the covenantee, may recover. Morrow v. Baird, 114 Tenn. 552.

Any subsequent vendee who is evicted may sue for the breach of the covenant of warranty of title. Hopkins v. Lane, 9 Yerger, 79; Kinney v. Norton, 10 Heisk. 384; Mette v. Saw, 9 Lea, 96.

Owners of the land for the time being are entitled to the benefit of all warranties of title and covenants which run with the land, which the prior owner in the claim of the title may have given. Lawrence v. Senter, 4 Sneed, 53; Mette v. Daw, 9 Lea, 97.

It is also the well-settled law that eviction actual or implied, must occur before the action for the breach of the covenant of warranty of title can be maintained. 17 R. C. L., p. 1148 (Sec. 62).

Under the well-settled law in this State, actual eviction by the holder of the paramount title, is not necessary, the eviction may be implied. Morrow v. Baird, 114 Tenn., 552; Hopkins v. Lane, 9 Yerger, 79; Kinney v. Norton, 10 Heisk, 384; Mette v. Daw, 9 Lea, 96.

In the instant case the paramount title to a one-half undivided interest in this property was in the heirs at law, the children of Mrs. Angiolina Solomito. The record in the case does not show that any claim was being made for the paramount title holder against the complainant at any time, either for rents or profits, or for recovery of the one-half undivided interest in the property. So far as the record discloses there was never at any time a threatened eviction either by judicial proceedings or by a claim to this interest. The complainants were in possession of the property and had not been disturbed in their quiet possession of the property.

It is contended for complainants that they have been actually evict-ed through the action of the defendant, Mrs. Kinney, in the fore-closure of the trust deed, and the subsequent unlawful detainer suit resulting in the eviction of complainants.

We do not think this contention is sound. This eviction was not the result of the breach of warranty. Upon a discovery by com-plainants that their title to the entire estate was defective, they notified the defendants and demanded that the title be perfected, and refused to make any further payments or to further recognize liability or obligation on the notes given for the purchase money and secured by the trust deed on the property. This was not an eviction by the paramount title holders to any interest in the property. They had so far made no question, and had asserted no rights in the property. It is not sufficient that the complainant could anticipate ultimate eviction at the hands of the paramount title holders to the one-half undivided interest. The rule is stated in 7 R. C. L., p. 1147 (Sec. 60) as follows:

"A covenant of general warranty being prospective in its nature, is broken only by an eviction under a paramount title existing at the time of the conveyance, or what in contempla-tion of law, is equivalent to eviction. It is, therefore, in this respect, unlike a covenant of seizin, or against encumbrances, which is considered to be broken instantly upon the execution of the conveyance if the grantor is not seized."

Under the head of "Constructive Eviction Generally," 7 R. C. L., p. 1149, Section 62, it is said:

"In consonance with, and in furtherance of, the doctrine that eviction by legal process is not necessary, it is now generally held, at least in this country, that it is not necessary that there should be an actual expulsion of the grantee in order that he may have an action on his covenant of warranty, but that he may voluntarily yield to an outstanding paramount title when called upon to do so without waiting to be sued. It is not necessary that there should be an actual dispossession of the grantee from the land; it is sufficient, after the paramount title is so asserted, that he must yield to it or go out."

In 15 C. J., 1288 (Sec. 157b), it is stated:

"While physical eviction is not necessary in order to con-stitute a breach of the covenants of warranty, in the absence of a statute to the contrary, the mere existence of an out-standing paramount title to land will not authorize a re-covery by the grantee in an action for a breach of the cove-nant; to warrant recovery there must be some hostile asser-tion of adverse title." Citing numerous cases.

In Kincaid v. Brittain, 5 Sneed, 124, the above rule is recognized and approved by our Supreme Court.

"The legal effect of the covenants of warranty and for quiet enjoyment is. very different from that of the covenants of seizin. The former are regarded as assertive to the purchaser of a permanent undisturbed possession of the premises conveyed and, therefore, are only broken by his eviction, actual or constructive, until when the purchaser can have no remedy but must await, at whatever hazard of ultimate loss, the event of his involuntary disseizin, by the paramount title, before he can be heard to allege a breach of either covenant." Kincaid v. Brittain, 5 Sneed, 124.

To the same effect is Young v. Butler, 1 Head., 640; Topp v. White, 12 Heisk. 175; Morrow v. Baird, 114 Tenn. 552.

Is there anything in this case that would take it out of the general rule of these subject? It may be said that complainant was at least a tenant in common with the heirs at law of Mrs. Angiolina Solomito, there being no question as to his title to the one-half undivided interest in the property under the chain of conveyances, beginning with the conveyance of Solomito to Mrs. Kinney, and that his co-tenants, could not, therefore, evict him from the premises, even though they asserted claim to title to a one-half undivided interest in the property. We have not found any case where this question is directly made or decided, nor have counsel furnished any authority on that subject.

Certainly the tenants in common would have the right, at least, to demand an accounting for rents and profits, and in proper cases for a partition or sale for division of the property, and this, we think would be equivalent to an eviction, to the extent of the one-half undivided interest of the co-tenants.

The fact remains that no such demand has been made, or action taken to enforce any such right.

This brings us to a consideration of the further question involved in the case, as to the estate owned by Solomito in this property from the death of his wife, Angiolina Solomito. As already stated, we think he did not take this property under the law of estates by the entireties, since the property was acquired by them and title taken to them as husband and wife after the Act, Chap. 26 of the Acts of 1913 went into effect and prior to its repeal in 1919, and hence he was co-tenant of his wife in this property, each owning a one-half undivided interest, and upon her death, she having died intestate, her one-half undivided interest under the law of descent vested in her children, subject to curtsey rights of their father, if curtesy proper or consummate was not de-

stroyed by Chapter 26 of the Acts of 1913 removing the legal disability of coverture.

As we interprete the decisions of our Supreme Court in construing the Married Woman's Emancipation Act (Chap. 26, Acts of 1913) in the cases of Day v. Burgess, 139 Tenn., 559, and Hull v. Hull, 139 Tenn., 570, in which two cases the effect of the Act referred to, on the question of estates by curtesy initiate and curtesy proper or consummate are fully discussed and decided this Act did not destroy estates by curtesy initiate, but the estate by curtesy initiate is shorn of any vested estate to the husband, as the wife could by a conveyance or by will defeat the estate, and when she fails to dispose of the property by deed or by will the estate by curtesy proper or consummate attaches to the husband upon her death.

In this view of the case we think that the husband, Solomito, by his deed to Mrs. Maggie Kinney conveyed to her all the right, title and interest that he had in and to the property in question. This was his one-half undivided interest acquired under the deed from Gillian and wife, and also the life estate therein as tenant by curtesy consummate to the other one-half undivided interest, and the surviving children of Mrs. Angiolina Solomito take the one-half undivided interest in the property subject to the life estate therein of their father. It follows that after complainants acquired title to all the interest in the property which Mrs. Kinney had acquired from her immediate vendor, that at the time he went into possession he was entitled to the full enjoyment of the property until the life estate of Solomito fell in, and this had not occurred so far as the record discloses at the time he refused to make further payments, and was subsequently dispossessed under the unlawful detainer proceedings.

The conclusion we reach is that, there had been no eviction, actual or constructive of the complainant from this property that would entitle him to sue for the breach of warranty of title, and that the chancellor was in error on this question.

We, having already held, however, that complainant could maintain his action for the breach of the covenants of seizin, even though covenants of seizin is a covenant in presenti and does not run with the land and does not as a rule enure to the benefit of a subsequent or remote vendee, yet, because of the established privity of relation, and the subrogated rights of complainants as acquiesced in by defendant, Mrs. Kinney, and under all the facts and circumstances attendant upon complainants assumption of the obligation to pay the deferred payment notes, and the defendant looking to complainants solely for the payment of said notes, so recognized and acquiesced in the transaction as to create and establish that privity.

necessary to enable the complainant to recover in this proceeding proper damages for the breach of the covenant of seizin. It now becomes necessary to consider the basis upon which the damages should be fixed for the breach of the covenant of seizin.

The chancellor fixed the basis for the recovery on the actual amount paid by complainant and received by defendant, Mrs. Kinney, plus the interest on these payments, and plus one-half of the taxes and interest on the taxes, plus one-half of the properly proven expenditures for material used for improvements, and from this amount deducted one-half of the value of the rent at the rate of $40 per month for the time that complainants were in possession of and occupied the premises.

We have been unable to find any authority that would warrant the basis for damages as fixed by the learned chancellor. 7 R. C. L., p. 1173 (Sec. 92) states the rule on the measure of damages for the breach of covenant of seizin to be:

"The covenant of seizin is in many respects synonymous with the covenant that the grantor has good right to convey, and so far as respects damages for breach, the two covenants stand on precisely the same ground. In the earlier cases it was sought to hold the covenantor liable for the increased value of the land and for the value of improvements made after the purchase; but it was held—adhering to the policy of the law exhibited under the old warranty and on the ground that it would be unlawful to make the grantor liable for increases in value, and for improvements made without his privity or sanction—that the true measure of damages was the value of the land at the time of the sale as agreed upon by the parties and shown by the amount of the consideration paid, together with interest upon that sum."

Numerous authorities are cited under Note 9 to the above Section. Thompson on Real Property, Vol. 4, p. 672 (Sec. 3572) states the rule to be substantially as above set forth.

The weight of authority seems to be that the recovery for the breach of the covenant of seizin should be the amount actually paid by the covenantee, plus the interest thereon, and does not warrant a recovery for improvements, or for enhanced value of the property. However, there is the further question involved as to the respective rights of the parties where the covenantee has enjoyed the profits, or rents of the property during his possession under the defective deed or title. Thompson on Real Property, Vol. 4, p. 709, states as follows:

"But if the grantee has a quiet possession of the land and has received the rents and profits from the time of the execution of the deed, and is not liable to account therefor to the

owner, he should not be allowed to recover interest on the consideration paid by him.''

''The rule in some states is that the measure of damages for the consideration paid with interest, though the plaintiff had undisturbed possession and had not been called upon to account for mean profits.'' Mather v. Stokley, 218 Fed 764.

This also seems to be the rule in Massachusetts.

However, we think in the present case, where the complainants have enjoyed the actual possession and occupancy of this property, under a deed, and title that gave them the undisputed right to occupy the premises, free from any claims of others holding a paramount title to the remainder in the one-half undivided interest, subject to life estate of a life tenant which has not fallen in, that it would be inequitable to permit him to recover the whole amount paid by him to the defendant, Mrs. Kinney, for the rents, plus interest, and without charging against him the rental value of the property for the time he was in possession.

In some jurisdictions the rule has been adopted that where the covenantee has been in possession and has enjoyed the mean profits, the recovery should be limited to the actual amount paid on the purchase price without interest.

A different rule has been adopted in this State. In Curtis v. Brannon, 98 Tenn., 158, it is said:

''In all matters of rescission and in all relief akin to rescission, a court of equity will invariably put the parties as nearly in statu quo as possible.'' See also Hull v. Harriman, 95 Tenn., 305.

The court in Curtis v. Brannon, supra, stated as follows:

''Having been in rightful possession, under a deed passing a good and perfect title to at least a life estate in the land conveyed, and the life tenant being still alive, so as to preclude the remaindermen from demanding rents for any part of the time, the vendee in the present case was liable to his vendor for the rental value of the premises from the inception of his possession to the date of the decree.''

We think, however, that the equities would be better reached and the parties more nearly placed in statu quo by allowing a recovery for the actual amount paid with interest and taxes and the costs of necessary repairs, and to charge against this amount the rental value during the time the complainants were in possession.

Under this rule as applied to this case, the complainants would be entitled to recover the $1,275 paid on the purchase price, plus the interest thereon, making principal and interest $1480.69, plus the taxes paid by complainant on the property with interest added

amounting to $115.88, plus the costs of material and repairs properly proven in the record $186.47, making the aggregate amount of $1,793.04. This amount to be credited with the admitted rental value at the rate of $40 per month, $1,320, making the net amount which complainants are entitled to recover of the defendant, Mrs. Kinney, the sum of $473.04. The effect of this opinion is a cancellation of the unpaid purchase notes, secured by the trust deed.

It results that the decree of the chancellor will be modified in accordance with this opinion, and judgment rendered in this Court on the above basis in favor of complainants and against the defendant, Mrs. Kinney, for the said sum of $473.04. The cost of the cause, including this appeal, to be paid one-half by complainants and the other one-half by the defendant, Mrs. Maggie Kinney.

Heiskell and Owen, JJ., concur.