JOE J. SMITH *et al. v.* BETTY HUMES HAIRE *et al.**

(*Knoxville.* September Term, 1915.)

1. WILLS. Probate. Costs.

An executor who in good faith propounds a will for probate is entitled to his costs and attorney's fees whether the will is set aside or not. (*Post, pp.* 346, 347.)

Cases cited and approved: Lassiter v. Travis, 98 Tenn., 330; Douglass v. Baber, 83 Tenn., 665; Smith v. Harrison, 49 Tenn., 230; Bowden v. Higgs, 77 Tenn., 346; Cornwell v. Cornwell, 30 Tenn., 487; Delegise v. Morrisey, 142 Wis., 234; In re Jones, 166 Cal., 147.

2. WILLS. Probate. Costs.

Where a will was procured by fraud and undue influence, and the executrix who propounded it for probate was the chief beneficiary, and was responsible for the fraud, she is not entitled to costs on the theory that she propounded the will in good faith. (*Post, pp.* 346, 347.)

3. BANKS AND BANKING. Certificates of deposit. Construction. "Or."

Notwithstanding Acts 1899, ch. 94, sec. 8, subd. 5, declaring that a promissory note may be made payable to one or some of several payees, a certificate of deposit payable to a husband or wife, naming them, must, in view of the fact that the husband used the word "or" as synonymous with "and," be construed as payable to the husband and wife. (*Post, pp.* 347-351.)

Acts cited and construed: Acts 1899, ch. 94, subsec. 5, sec. 8.

Cases cited and approved: Ransom v. Rutherford County, 123 Tenn., 1; Bird v. State, 131 Tenn., 518; Blanchenhogan v. Blundell, 2 B. & Ald., 417; Carpenter v. Farnsworth, 106 Mass., 561; Walrad v. Petrie, 4 Wend. (N. Y.), 575; Musselman v. Oakes, 19 Ill., 81; Willoughby v. Willoughby, 5 N. H., 244; Spaulding v. Evans, Fed. Cas. No. 13, 216; Walrad v. Petrie,

---

*On allowance of attorney's fees in suit for administration of decedent's estate see note in 54 L. R. A., 820.

Smith v. Haire.

4 Wend. (N. Y.), 575; Quinby v. Merritt, 30 Tenn., 439; Estate of William Parry, 188 Pa., 33; Farrelly v. Emigrant Savings Bank, 92 App. Div., 529.

4. **HUSBAND AND WIFE. Obligations. Survivorship.**

Where an obligation is in favor of a husband and wife such joint security or chose in action survives to the wife as against the personal representative of the husband, though the consideration therefor passed from the husband. (*Post, pp.* 351, 352.)

Cases cited and approved: Johnson et al. v. Lusk, Exr., et al., 46 Tenn., 113; McMillan v. Mason & Sherrill, 45 Tenn., 263; Pile v. Pile, 74 Tenn., 508.

5. **HUSBAND AND WIFE. Wife's choses in action. Reduction to possession.**

That a husband who had a certificate of deposit made payable to himself and wife retained it in his possession does not show a reduction to possession destroying the wife's rights of survivorship. (*Post, pp.* 351, 352.)

6. **HUSBAND AND WIFE. Wife's choses in action. Reduction of possession.**

Where a husband who had a certificate of deposit made payable to himself and wife made a will carrying with it disposition of such certificate, the execution of the will, which instrument was ambulatory and did not speak until the husband's death, did not amount to a reduction of the chose in action to possession, destroying the wife's right of survivorship. (*Post, pp.* 352-357.)

Cases cited and approved: McElhatton v. Howell, 5 Tenn., 19; Cox v. Scott, 68 Tenn., 305; Rice v. McReynolds, 76 Tenn., 37; Smith v. Smith, 98 Tenn., 102; Prewitt v. Bunch, 101 Tenn., 723; Swiney v. Swiney, 82 Tenn., 316; Swails v. Bushart, 39 Tenn., 561; Johnson v. Johnson, 103 Tenn., 32; Nash v. Nash, 2 Maddock, 133; Blount v. Bestland, 5 Ves., 515.

Cases cited and distinguished: Dummer v. Pitcher, 2 My. & K., 262; Pile v. Pile, 74 Tenn., 512.

Smith v. Haire.

FROM MONROE.

Appeal from the Chancery Court of Monroe County. —Foss H. MERCER, Chancellor.

R. H. SANSOM and JOHN W. GREEN, for appellants.

JEROME TEMPLETON and DAVID C. YOUNG, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

This litigation arises out of the settlement of the estate of the late J. T. M. Haire, of Monroe county.

Mr. Haire died, leaving a will by which he devised and bequeathed all his estate to his wife, Betty Humes Haire, absolutely. This will was contested on the ground of mental incapacity of testator and fraud and undue influence. The will was set aside and this judgment affirmed by the court of civil appeals, and later by this court.

Another will of Mr. Haire's, made before the one contested, was then set up. In the former will, which was the one finally established, Mr. Haire gave his estate to his wife for life, with the remainder to certain relatives of his own.

In the controversy now before us two questions arise: First, the liability of Mr. Haire's estate for attorney's fees incurred by Mrs. Haire as executrix in the contest

over the will that was set aside; and, second, whether certain certificates of deposit issued by two of the Knoxville banks payable to J. T. M. Haire or Betty Humes Haire passed under the will admitted to probate, or whether Mrs. Haire took these certificates in her own right as survivor of her husband.

In regard to attorney's fees, it is well settled in Tennessee that an executor who in good faith propounds a will for probate is entitled to his costs and attorney's fees, whether the will be set aside or not. *Lassiter* v. *Travis,* 98 Tenn., 330, 39 S. W., 226; *Douglass* v. *Baber,* 15 Lea, 665; *Smith* v. *Harrison,* 2 Heisk., 230; *Bowden* v. *Higgs,* 9 Lea, 346; *Cornwell* v. *Cornwell,* 11 Humph., 487.

In *Lassiter* v. *Travis,* supra, it appeared that the executrix of the will there contested was the principal beneficiary thereof, and, although the will was set aside, this court held she was entitled to her costs and attorney's fees out of the estate. The court said that:

"Good faith, rather than pecuniary interest, on the part of the acting executor, is the controlling question in such a case."

It does not appear from the report of *Lassiter* v. *Travis,* supra, upon what ground the will was set aside.

The will of J. T. M. Haire, of which his wife was sole beneficiary and executrix, was set aside on the ground, partly at least, of fraud and undue influence. There was evidence before the jury which this court at a former term thought sustained the jury's conclusions

respecting the will. Such evidence indicated that, if Mrs. Haire herself did not resort to such means, undue and fraudulent influence was exerted over the testator by certain of her relatives in her behalf, for whose acts she must be charged with responsibility.

It cannot be said that the beneficiary of a will procured by fraud and undue influence, for which she is responsible, is acting in good faith when she attempts to have such a will set up. In such a case costs and counsel fees must be disallowed to the executrix when the will is set aside. 40 Cyc., 1362; *Deleglise* v. *Morrisey*, 142 Wis., 234, 125 N. W., 452; *In re Jones,* 166 Cal., 147, 778, 135 Pac., 293.

We do not mean to say that we will disallow such costs and attorney's fees in every case wherein a will may be set aside on the ground of fraud and undue influence, even though the executor or executrix may be the sole beneficiary. A case may arise in which the jury would find fraud and undue influence with enough evidence to require an approval of such a verdict by the court, and yet there might be in such a case circumstances that would justify the attempted probate of the will in good faith. In the case before us, however, we are satisfied with the judgment of the court of civil appeals disallowing the counsel fees. That court has discussed the evidence at length, and we considered the evidence on the hearing of the will contest, and it is not necessary to go over it again.

The certificates of deposit in litigation were two in number. One was issued by the East Tennessee Na-

tional Bank, of Knoxville, for $4,500. The other was issued by the Mechanics' Bank & Trust Company, of Knoxville, for $6,500. Both certificates recited a deposit by J. T. M. Haire, and were payable to the order of the said J. T. M. Haire or Betty Humes Haire.

The money represented by these certificates of deposit came from the estate of Mr. Haire. The certificate of deposit in the Mechanics' Bank & Trust Company consisted of several smaller deposits previously made by Mr. Haire in his own name. They were combined, and at the request of Mr. Haire a certificate was issued for the aggregate sum payable to himself or his wife, as before stated. The deposit in the East Tennessee National Bank was made by Mr. Haire at one time, and a certificate issued payable to himself or wife:

The evidence in the record throws little light upon Mr. Haire's intentions in having these certificates of deposit issued to the order of himself or his wife. Mrs. Haire said that he told her he had the certificates issued in this way so that she might be able to get ready money easily. Just what this means we are not able to say, nor is there any other distinct proof in the record from which we might gather the purpose of the deceased in taking the certificates out in such form.

So we must consider the legal effect of these certificates so written without any particular aid from extrinsic proof, except certain letters written by Mr. Haire to the banks.

The first question that arises is upon the meaning to be given to the conjunction "or" in the certificates. Is it to be considered as having been used in the sense of "and"? We think the word was so used.

The words are often convertible, and are frequently so treated in the construction of statutes and written instruments, when good sense requires. *Ransom* v. *Rutherford County*, 123 Tenn., 1, 130 S. W., 1057, Ann. Cas., 1912B, 1356; *Bird* v. *State*, 131 Tenn., 518, 175 S. W., 554.

It was formerly held in several jurisdictions that a note payable to A. *or* B. was not good as a promissory note, because of the uncertainty of the payee. *Blanchenhogan* v. *Blundell*, 2 B. & Ald., 417; *Carpenter* v. *Farnsworth*, 106 Mass., 561, 8 Am. Rep., 360; *Walrad* v. *Petrie*, 4 Wend. (N. Y.), 575; *Musselman* v. *Oakes*, 19 Ill., 81, 68 Am. Dec., 583.

Other cases treated such a note as though written payable to A. *and* B. So read, the note would be evidence of an obligation to the payees jointly, and suit could be maintained thereon by both payees, but not by one. *Willoughby* v. *Willoughby*, 5 N. H., 244; *Spaulding* v. *Evans*, Fed. Cas., No. 13216. This view was really approved in *Walrad* v. *Petrie*, 4 Wend. (N. Y.), 575, but the court felt bound by the cases referred to above.

This court very distinctly adopted the New Hampshire construction in the early case of *Quinby* v. *Merritt*, 11 Humph., 439. In that case a certain written obligation was indorsed to the order of C. W. or W. L.

Nance. C. W. Nance alone undertook to transfer it. This court said that, while such a paper was not valid as a promissory note, "yet it is evidence of a contract for the payment of money, and according to the cases referred to, and especially that in 5 N. H., is evidence of a contract with both the payees jointly; and they have, therefore, a joint interest in the fund secured by such note." The court accordingly held that a suit could not be maintained by the indorsee C. W. Nance; that it was necessary for C. W. and W. L. Nance both to indorse the paper to effect a valid transfer.

See, also, *Estate of William Parry*, 188 Pa., 33, 41 Atl., 448, 49 L. R. A., 444, 68 Am. St. Rep., 847; *Farrelly* v. *Emigrant Savings Bank*, 92 App. Div., 529, 87 N. Y. Supp., 54.

While subsection 5, section 8, chapter 94, Acts 1899 (Negotiable Instruments Act), provides that a promissory note may now be made payable to "one or some of several payees," the statute does not undertake to define the interests of such payees in the obligation, and we do not think it invariably precludes us from construing such an obligation to be one in which the payees have a joint interest.

In the particular case before us such a construction is clearly correct.

Looking to the correspondence of Mr. Haire with the banks, when these certificates were issued, it appears beyond doubt that Mr. Haire himself used the conjunctions "or" and "and" as convertible words in arranging about these deposits. It is conceded that

he had the same intention with reference to both deposits. In his correspondence with the Mechanics' Bank & Trust Company we find him requesting that certificates be issued payable to the order of himself *or* wife, and in two of his letters to the East Tennessee National Bank about the deposit there he requests that the certificate be issued to the order of himself *and* wife. Both banks made the certificates payable to Haire *or* his wife. We think these letters of his show conclusively that he attached no such significance to the word "or" in the certificates of deposit, as counsel for complainants ascribe to the use thereof, but, on the contrary, his letters very clearly show that he took no distinction between the words "or" and "and" in this connection, and neither did the East Tennessee National Bank.

It thus appearing to us that the certificates of deposit must be dealt with as if payable to Mr. Haire *and* his wife, there would be little more difficulty in the case were it not for Mr. Haire's will, which has been admitted to probate.

Where an obligation is taken to husband and wife, such joint security or chose in action survives to the wife as against the personal representative of the husband. It makes no difference whether the consideration of the chose in action passes from the husband or not. The form of the security implies a design on the husband's part to benefit the wife, and the law will effectuate this design. While during her lifetime the husband might reduce this joint chose in action to

possession just as he could the wife's individual chose in action, if he fails to make such reduction to possession during coverture, such security will survive to his wife. These propositions are too firmly established to necessitate elaboration. *Johnson et al.* v. *Lusk, Ex'r, et al.,* 6 Cold., 113, 98 Am. Dec., 445; *McMillan* v. *Mason & Sherrill,* 5 Cold., 263, 98 Am. Dec., 401; *Pile* v. *Pile,* 6 Lea, 508, 40 Am. Rep., 50; 21 Cyc., 1197.

Mr. Haire did nothing in his lifetime which would amount to a reduction to possession of these certificates of deposit; in fact, they were renewed, each of them, repeatedly, and each time renewed payable to himself or his wife. In this way he continued to recognize her joint interest therein until the time of his death.

It is true that he kept such certificates of deposit in his possession, but mere possession by the husband does not aomunt to a reduction into possession. 21 Cyc., 1182; Bishop on Married Women, secs. 119, 120.

But it is insisted that Mr. Haire undertook a disposition of these certificates of deposit by the will which has been set up as valid. While the will does not mention said certificates of deposit *eo nomine,* still it may be fairly conceded upon the facts appearing in this case that it was the testator's intention to dispose of these securities by this instrument.

Can a husband who fails to reduce his wife's chose in action to possession during coverture dispose of such property by will and defeat her right of survivorship? We think not, and this we are forced to say,

although such conclusion conflicts with a previous expression by this court.

The general rule announced in numerous cases is that marriage amounts to a qualified gift only of the choses in action which the wife possesses at the time of the marriage or thereafter acquires, and to perfect his title and make certain his rights thereto, so as to defeat the wife's right of survivorship, there must·be a reduction to possession by the husband during coverture. *McElhatton* v. *Howell,* 5 Tenn. (4 Hayw.), 19; *Cox* v. *Scott,* 68 Tenn. (9 Baxt.), 305; *Rice* v. *McReynolds,* 76 Tenn. (8 Léa), 37; *Smith* v. *Smith,* 98 Tenn., 102, 38 S. W., 439, 60 Am. St. Rep., 838; *Prewitt* v. *Bunch,* 101 Tenn., 723, 50 S. W., 748.

In *Pile* v. *Pile,* 74 Tenn. (6 Lea), 508, 40 Am. Rep., 50, the husband executed a will in which he disposed of a chose in action payable to his wife and himself jointly. The court recognized the wife's right of survivorship in such a joint security, and quoted from 1 Daniel's Neg. Inst., sec. 257, to the effect:

"That any act of the husband during marriage manifesting a distinct purpose to make his wife's chose in action his own operates as a reduction into possession and bars her right of survivorship; but mere intention, unaccompanied by act, will not suffice."

The court then said:

"It is true as a will to convey to his devisees and legatees his property it only took effect to vest them with rights at his death; but as an act declaratory of his purpose and intention that certain named persons

133 Tenn. 23

should have this note or its proceeds it was done and completed before his death. It certainly was an 'act of the husband during marriage manifesting a distinct purpose to make his wife's choses in action,' or rather his own choses in action, subject to his exclusive control and disposition, and thus to defeat her right of survivorship.

"If to bring suit in his own name, or transfer the note to another, or place it among his valuable papers, claiming it as his own, would be sufficient to defeat his wife's right of survivorship, we are of opinion the declaration of such intention by the act of signing and duly executing his will is sufficient to effect the same object." *Pile* v. *Pile,* 6 Lea, 512, 40 Am. Rep., 50.

We are unable to follow this reasoning of the learned judge.

As is conceded, a will is of no effect until after the death of the testator. *Swiney* v. *Swiney,* 14 Lea, 316; *Swails* v. *Bushart,* 2 Head, 561; *Johnson* v. *Johnson,* 103 Tenn., 32, 52 S. W., 814.

We have just seen that there must be some act amounting to a reduction to possesion during coverture in order to bar the wife's right of survivorship, and, as the court said in *Pile* v. *Pile,* supra, a mere intention, unaccompanied by an act, will not suffice.

The drafting of a will is not a definite or positive act in the sense of the law. Drawing a will can have no effect on the title to property. No *status* is changed thereby. The effect of a will is postponed until after

the death of the testator, when the marriage relation between the testator and his wife is at an end.

Reduction to possession must be by an act certain, definite, and positive.  A will is ambulatory.  The incorporation in a will or a provision disposing of his wife's unreduced choses in action is the mere expression of an intention on the part of the husband to transfer them or assign them after his death—after coverture has ended, when his power over them is gone.

The authorities say that the husband's intention to reduce the wife's choses "must be followed by some postive act changing the property and divesting it out of the wife."  Bell, Husband and Wife, 55, 56; Bishop on Married Women, 111; Schouler's Domestic Relations, sec. 84.

The mere making of a will cannot divest the wife's interests nor change the *status* of her property; for the will does not speak nor operate until the husband has passed into that realm where there is neither "marrying or giving in marriage," and he is beyond the exercise of any marital right or earthly act.

The case of *Pile* v. *Pile,* supra, is without any authority to support it.

In *Nash* v. *Nash,* 2 Maddock, 133, 56 Eng. Rep., 284, and in the case of *Blount* v. *Bestland,* 5 Ves., 515, 31 Eng. Rep., 719, attempts were made to dispose of the wives' unreduced choses by the husbands' wills.  It was not contended in either case that the making of these wills amounted to a reduction, and the effort of counsel was to show that the choses had been reduced

by certain acts during coverture. Such acts were held insufficient, the wives' rights of survivorship were sustained, and the provisions in the wills respecting the securities in question were given no effect whatever.

In *Dummer* v. *Pitcher*, the testator had taken certain stocks in the joint names of his wife and himself. It was insisted that this stock passed under his will. It was held by the Vice Chancellor, Sir L. Chadwell, that the wife, "by surviving her husband, became absolutely entitled to the sums of stock." *Dummer* v. *Pitcher*, 5 Sim., 35, 58 Eng. Rep., 251.

This case was appealed and affirmed. In his disposition of the appeal Lord Chancellor Brougham said:

"It was further contended that the circumstances of the testator's power over the chose in action continuing after the transfer and up to his death differs in this from the case of advancement to a child. But there is a great fallacy here, as it seems to me. The testator's power may have continued, but in what capacity? As husband and in the exercise of his marital right. Then suppose it to be admitted that he might have reduced the stock (a chose in action) into possession by having had it retransferred into his own name during his lifetime, still the argument is not at all advanced, for it is not pretended that anything was done after the first transfer, the stock standing in the joint names at the date of the will, and at the death of the testator. The husband makes the will which is said, indeed, not to relate to the stock. But, suppose with a view to this part of the argument, we were to admit that it did; the

wife's right would survive nevertheless. I have no doubt whatever that the stock survived to the wife." *Dummer* v. *Pitcher*, 2 My. & K., 262, 39 Eng. Rep., 944.

It thus seems that, upon reason and authority, *Pile* v. *Pile* on this point must be overruled. The will of the husband was not effective to cut off Mrs. Haire's right of survivorship in these certificates of deposit, which we have held to be joint choses.

It results that the decree of the court of civil appeals in this respect was erroneous, and must be reversed. The costs of these proceedings will be divided between the parties.