## HENRY A. SCHOLZE v. SUE FONDA SCHOLZE et al.

Middle Section.   December 19, 1925.

No petition for Certiorari was filed.

1. **Words and phrases. "Tenancy by the entirety" and "right of survivorship in personalty" distinguished.**
The difference between tenancy by the entirety in land and the right of survivorship in personalty at common law was that the husband could not sell or dispose of the land so as to defeat his wife's right of survivorship after his death, but at common law the husband becomes the owner of his wife's personalty upon marriage, and he had a right to reduce his wife's choses in action to possession, in which event he became the absolute owner, and could dispose of the same and thus defeat her right of survivorship after

his death, but if he died without reducing them to possession and without disposing of the property, her right of survivorship remained.

2. Joint tenancy. Joint tenancy abolished by Act of 1784.

By the Act of 1784 (Shannon's Code, section 3677), the right of survivorship in all estates, real and personal, held in joint tenancy was abolished in Tennessee.

3. Husband and wife. Estate by entirety. Estate by entirety not abolished by Act of 1784.

The Act of 1784 (Shannon's Code, section 3677) has been held to apply to technical joint tenancy only, and does not apply to tenancy by the entirety by the husband and wife taking one indivisible estate.

4. Husband and wife. Act of 1784, Shannon's Code, section 3677, does not apply to choses in action payable to husband and wife.

This statute has been held not to apply to choses in action payable to the husband and wife or to the wife's property not reduced to possession, because the right of survivorship was recognized at common law, and because it was not a technical joint tenancy.

5. Husband and wife. In Tennessee there was no tenancy by the entirety in personalty.

In Tennessee there is no tenancy by the entirety in personalty. The interest is known as the "right of survivorship" which is distinguished from a tenancy by the entirety.

6. Husband and wife. Act of 1919, chapter 126, preserving tenancy by the entirety did not save the right of survivorship in personalty.

Held that the Act of 1919 empowering married women to hold and possess and dispose of their property as if single abolished tenancy by the entirety and the right of survivorship in personalty and the saving clause in section 2 of said act preserved tenancies by the entirety only and does not apply to the right of survivorship in personalty.

7. Statutes. Words in a statute are construed according to their common-law meaning.

It is an established rule in the construction of statutes that words with fixed meaning at common law, or by decisions of the courts, are presumed to be used in a statute later enacted in the same sense and with the same meaning that they had at common law or in such decisions, unless a different sense is apparent from the context or the general purpose of the statute or unless expressly defined by statute.

8. Gifts. A delivery and an intention to give must accompany each other to make a valid gift.

To make a valid gift there must be a delivery and an intention to give must accompany it, and the burden of proof as to the validity of the gift is on the donee and this is especially true where the gift is asserted after the death of the alleged donor.

9. Gifts. Possession by the donee is not sufficient.

Mere declarations of gift by an alleged donor are not sufficient to establish delivery and the possession by the donor is not entitled to weight as evidence.

10. Evidence. Gifts. Evidence examined and held not to sustain a gift.

In an action by the widow to recover certain notes as a gift from her husband where notes were taken in the joint names of the husband and wife and when the notes were delivered to the husband, he turned them over to the wife, and told her to keep them, held not to prove a gift to the wife of the husband's one-half interest in the notes.

11. **Gifts. Delivery held sufficient.**
Where notes were taken in the joint name of husband and wife and upon delivery the husband turned the notes over to the wife, held there was a sufficient delivery and the wife was entitled to a half interest in the notes.

12. **Wills. Advancements. Advancements as prescribed by Shannon's Code, sections 4174-4176 has no application to a case of total testacy.**
Where the will itself disposes of the entire estate and directs its disposition, the collation of advancements is made impossible unless the same is provided for in the will.

13. **Wills. Ademptions. When ademptions will not prevail.**
Under the decisions of the Supreme Court the presumption of satisfaction of a gift under a will or ademption will not prevail, (1) where the testamentary portion and the subsequent advancements are not of the same nature; (2) where the latter depends on a contingency and the former is certain; (3) where either is in lieu of, or a compensation for, an interest to which the child is entitled independently of the will; or (4) where the bequest is of a residue or part of a residue.

14. **Wills. Ademptions. Where the gift by the will and the subsequent gifts advanced are not ejusdem generis, nothing more appearing, there is no ademption.**
Where the gift by a will and the subsequent portions advanced or property conveyed are not ejusdem generis the presumption of ademption will be repelled or will not arise and, nothing more appearing, the legacy will be payable.

15. **Wills. Enumeration of certain property in a residuary clause of a will does not alter the character of the clause.**
In a suit to construe a will where it was contended that the residuary clause of the will was not strictly a residuary clause in that it enumerated and set out in detail certain property, held merely enumerating some of the articles contained in the residuary clause does not alter the character of the legacy.

16. **Estoppel. Wills. Widow claiming to be absolute owner of certain notes, both by gift and by right of survivorship not estopped to claim the same under the residuary clause of the will.**
In an action on a will where the widow claims to be the absolute owner of certain notes both by right of survivorship and by gift, and where she failed to prove her ownership of said notes, held that she was not estopped to claim her proportionate part of said notes under the residuary clause of her husband's will.

17. **Executors and administrators. The fact that an executor is friendly to the widow is not grounds for his removal.**
In an action to construe a will where the evidence merely showed that the executor was friendly to the widow but there was no evidence that he let his friendship for her interfere with his duties as executor, held evidence did not show grounds for the removal of the executor.

18. **Courts. Jurisdiction. Chancery courts have jurisdiction for the purpose of construing wills.**
In an action brought by a legatee to construe a will and restrain the transfer of certain notes by the widow, and to finally settle the estate in chancery court, where the executor filed a cross-bill and asked for affirmative relief, held that the chancery court acquired jurisdiction of the cause and the estate was properly ordered transferred from the county court to the chancery court to there be administered and settled.

19. **Courts. Jurisdiction. Jurisdiction can be resisted only by plea in abatement.**
    In an action to construe a will where an answer was filed, held the filing of the answer was a waiver of the objection to the jurisdiction of the court since the jurisdiction of the chancery court can be resisted only by plea in abatement, demurrer, or a motion to dismiss and not by answer.

Appeal from Chancery Court, Hamilton County; Hon. Floyd Estill, Special Chancellor.

Affirmed.

Miller & Miller, of Chattanooga, for complainant, Henry A. Scholze.

G. B. Murray, Allison, Lynch & Phillips and Lowndes Turney, of Chattanooga, for Ramsey Heirs.

J. H. McLean and J. H. Cantrell, of Chattanooga, for executor, J. H. McLean.

Strang & Fletcher and Shepherd & Carden, of Chattanooga, for defendant, Mrs. Sue Fonda Scholze.

CROWNOVER, J. The bill was filed by the complainant, one of the devisees, against the widow, the executor and the other devisees and legatees under the will of Ernest W. Scholze, deceased, for an accounting and settlement of said estate of E. W. Scholze, deceased, and sought (1) a construction of said will; (2) to restrain the transfer of certain notes claimed by the widow, and (3) to have the estate of Ernest W. Scholze administered and settled in the chancery court.

The executor answered and denied that the will was ambiguous or needed any construction, and denied that the administration of the estate should be transferred from the county court to the chancery court.

He filed his answer as a cross-bill and sought to recover of complainant two notes of $833.33, each, for a Georgia farm that he alleged belonged to the estate of Ernest W. Scholze, deceased. He alleged that Henry A. Scholze was liable for the payment of a $5,000 note due Mrs. Gertrude K. Scholze by said estate, as he had assumed the payment of same by the terms of deed from Ernest W. Scholze to him. He also alleged that there were seven notes of $10,000, each, executed by J. H. Allison & Co., that were then in the possession of the widow, Mrs. Sue Fonda Scholze, which he alleged were a part of the estate of Ernest W. Scholze, deceased, and asked that they be turned over to him as executor.

The executor also alleged that the testator had executed a deed conveying certain valuable property to complainant after the will was written, and insisted that the complainant took said property in satisfaction of his share in said estate under the will, and that the doctrine of advancement or ademption, should be applied, and asked for a reference to the master, to ascertain what property had been received by complainant and the widow, and its value, the amount of indebtedness assumed and paid by complainant, and whether

any advancements had been made to the defendants, Ramsey heirs, and the amount of the estate that remained to be administered.

The complainant, Henry A. Scholze, answered the cross-bill, and insisted that he was the owner of two $833.33 notes, and insisted that they were conveyed to him in said deed, but denied that the property conveyed was an advancement to him or should be treated as an ademption, and further insisted that the executor should be removed because he had colluded with the widow, and had permitted her to take possession of the seven $10,000 notes, to which she was not entitled, and that he had not tried to recover possession of them, and had not taken any steps to enjoin her from transferring said notes, and had not filed reports and inventories of the property of the said estate as required by law.

The widow, Mrs. Sue Fonda Scholze, filed answers to the original bill and cross-bill, and insisted that the seven notes of $10,000 each, were executed by J. H. Allison & Co., to Ernest W. Scholze and herself, as joint payees, for the ice factory, slaughter house, equipment and property, and that said notes were her property (1) because she owned a half interest by virtue of being joint payee, (2) that she acquired the other half of said notes by gift and delivery to her by her husband, and (3), that they belonged to her by right of survivorship as tenant by the entirety. She denied that the estate owned any part of the notes, and she further denied that the doctrine of advancement or ademption applied to her, or that said notes were given to her as satisfaction in full of her share of the property coming to her under said will.

The other defendants legatees answered and insisted that the complainant should account for the two $833.33 notes, and that the conveyance of the property to complainant by deed, after the will was executed, was in satisfaction of his share in said estate, and that at least the doctrines of advancements and ademption should apply to him. They also insisted that the widow was not entitled to said seven notes of $10,000 each, or any part of the same on account of being joint payee, as it was contended that the doctrine of survivorship did not apply, and also, because the husband had not given or delivered said notes to the widow, and did not intend that she should have any interest other than as given her by his will.

It was further insisted by them that if she had any interest in said notes she took them as an advancement and that the doctrine of ademption applied to her.

A large record, consisting of the depositions of many witnesses, was read to the Special Chancellor, who decreed that:

> The administration of the estate should be transferred from the county court to the chancery court and be administered and settled in this cause, and the executor was directed to file a supplemental report within 30 days, which was done;

That complainant, Henry A. Scholze, was not liable for the $5,000 note due Mrs. Gertrude K. Scholze.

He decreed to complainant the two $833.33 notes for the Georgia land as a part of fertilizer plant and indebtedness;

That Mrs. Sue Fonda Scholze was the owner of one-half interest in the seven $10,000 Allison & Co., notes, as her name was in the notes as joint payee, she to collect half and the executor to collect the other half;

That the doctrine of ademption did not apply to complainant and the widow;

That the residue of the estate, after paying the debts, taxes, costs and expenses of administration, and the three specific legacies, be divided into three equal shares, one-third to be paid to each, complainant, Henry A. Scholze, Mrs. Sue Fonda Scholze, and the Ramsey Heirs, but not to the trustee, J. H. McLean, unless by special order of the court.

The Chancellor specially found that the proof failed to show a gift by the testator of said Allison & Co., notes to his widow.

All the parties excepted to said decree, and each prayed for and perfected an appeal to this court, and has assigned errors.

The complainant assigned three errors, in which it was insisted that the Chancellor was in error in decreeing:

(1)   That Sue Fonda Scholze was entitled to one-half of the $70,000 J. H. Allison & Co., notes.

(2)   That Mrs. Sue Fonda Scholze was entitled to one-third interest in the residue of the estate.

(3)   That the executor should collect the half of the Allison & Co., notes, instead of paying it into court.

The defendant, J. H. McLean, executor of said estate and trustee for the Ramsey Heirs, excepted and assigned six errors, by which he insists that the court was in error for the following reasons:

(1)   That the court erred in decreeing that the original bill was properly filed to administer the estate, and in decreeing that the administration of the estate should be transferred to the chancery court.

(2)   The court erred in decreeing the two $833.33 notes for the Georgia farm to complainant, Henry A. Scholze.

(3)   The court erred in not decreeing that complainant, Henry A. Scholze, was chargeable with the property given and conveyed to him subsequent to the date of the will, as advancements, ademption and satisfaction or payment on his share bequeathed and devised to him in the will.

(4)   The court erred in not decreeing that the property conveyed to complainant, Henry A. Scholze, by deed was a full settlement of his share of his father's estate.

(5)   The court erred in decreeing that complainant, Henry A. Scholze, was entitled to one-third of the residue of the estate.

(6)   The Chancellor erred in decreeing that Mrs. Sue Fonda Scholze was the owner of one-half interest in the seven $10,000 J. H. Allison & Company's notes.

The widow, Mrs. Sue Fonda Scholze, excepted and assigned two errors, as follows:

(1)   The Chancellor erred in decreeing that a half interest in the seven $10,000 Allison & Co., notes belonged to the estate, and in enjoining her from collecting them, it being insisted that she was the owner by gift from her husband, and by the right of survivorship.

(2)   That the Chancellor erred in finding as a fact that the proof failed to show a gift by her husband to her of said notes.

The Ramsey Heirs joined with the several parties and insisted:

(1)   That the court was correct in decreeing that the ad--ministration of the estate should be transferred to the chancery court and administered in this cause.

(2)   · That complainant, Henry A. Scholze, is chargeable with the two $833.33 notes for the Georgia farm, and that they were not assigned or transferred to him by the deed conveying the Fertilizer Plant, Soap Works and other assets.

(3)   That E. W. Scholze did not give the seven $10,000 notes or any part of them to Mrs. Sue Fonda Scholze, and that she is not entitled to same by right of survivorship as tenant by the entirety.

(4)   That any gifts by the deceased to Henry A. Scholze or to Mrs. Sue Fonda Scholze subsequent to the making of the will were made in satisfaction of their respective shares of the estate, or at least, were intended by the testator as satisfaction pro tanto of the bequests in the will.

Ernest W. Scholze, who possessed a large estate, died on December 20, 1920, leaving surviving him, his widow, Mrs. Sue Fonda Scholze, his son, Henry A. Scholze, and four grandchildren, known as the Ramsey Heirs, the children of his deceased daughter, Lillie who had married George Ramsey. His surviving widow, was his second wife and not the mother of his children.

Said Ernest W. Scholze had made and published his will on January 28, 1919, in which he devised (1) to his wife, Mrs. Sue Fonda Scholze, his home and household furniture, certain city lots, automobile and live stock in city of Chattanooga; (2) to his son, Henry A. Scholze, he devised "the old Homestead Place" of 2½ acres, a farm of 22 acres on which was located the Rendering Works, in Hamilton county, Tennessee, and a farm of 124 acres in the State of Georgia; (3) he directed that the residue of his estate consisting of the ice

factory, the slaughter house, the soap factory, the fertilizer works, lands and houses, mortgages, bonds, notes, accounts and all other evidence of indebtedness, be converted into money, and after paying his debts, and expenses of administration, and three specific bequests of $1,000 each, that his executor divide the remainder of the proceeds of his estate into three parts, and pay one-third to his wife, Mrs. Sue Fonda Scholze, one-third to his son, Henry A. Scholze, and one-third to the Ramsey Heirs, the four children of his deceased daughter, Lillie. The one-third to the Ramsey Heirs was bequeathed to J. Hodge McLean, in trust for them during their minority.

The will further provided that if either his widow or son desired any of the property directed to be sold, upon suggestion, the executor was directed not to sell such property but must set it apart to said legatee, have it appraised, and charge its value to such legatee.

J. Hodge McLean was nominated and appointed executor, and testamentary trustee for the Ramsey Heirs, without bond.

All the testator's estate was his individual property and none came by his wife, Sue Fonda Scholze.

On December 31, 1920, after making and publishing said will, said Ernest W. Scholze, sold and conveyed by deed the ice factory, slaughter house and equipment and 5 lots to J. H. Allison & Co., for the consideration of $125,000, of which $25,000 was paid in cash, and for the remainder, J. H. Allison & Company executed their ten notes of $10,000 each, that matured consecutively every 12 months, bearing six per cent interest from date. His wife, Mrs. Sue Fonda Scholze, joined in the deed, and said notes were made payable to "E. W. and Sue Scholze" jointly. Shortly thereafter, the first three of said notes were discounted, and their proceeds together with the cash payment were used by said E. W. Scholze in liquidating his indebtedness.

On the same day, and contemporaneously with the execution of the deed to Allison & Company, said E. W. Scholze executed a deed conveying to his son, Henry A. Scholze, the fertilizer factory, soap works and machinery, the office furniture, supplies, trucks, mules and wagons used in connection with the ice factory, the Rendering Plant and three parcels of land in the city of Chattanooga, and "Also, all cash on hand, notes, accounts and claims of every kind and nature outstanding in my favor on account of the business done by me under the head of ice business, fertilizer business, and soap business as above set out."

The recited consideration was for "the love and affection I have for my son, Henry A. Scholze" and the further consideration that Henry A. Scholze "hereby assumes and agrees to pay all the indebtedness now outstanding against me by reason of the business carried on under the head of the E. W. Scholze Fertilizer Co., the Mountain

Spring Ice Co., and the Soap Business'' in his name, but did not include the indebtedness due the First National Bank or other indebtedness ''not growing out of the current business transactions, as above stated.''

The widow, Mrs. Sue Fonda Scholze joined in said deed and relinquished her interest in said property.

On November 3, 1919, Ernest W. Scholze sold and conveyed by deed to Spier & Thurman the Georgia farm of 124 acres, previously devised to Henry A. Scholze, for the consideration of $2,500, of which $833.33 was paid in cash, and for the remainder, they executed two notes of $833.33 each, due in one and two years. This farm had been conveyed in 1914 by G. W. Ball to Ernest W. Scholze in payment of a fertilizer account. The said two notes were placed with the fertilizer papers and carried on the books of the fertilizer plant as a part of its assets, and after the execution of the deed to Henry A. Scholze, he took possession of said notes and now claims that they were conveyed to him by said deed as a part of the assets of the fertilizer business.

Ernest W. Scholze married his second and last wife on July 9, 1914, and made and published his will on January 28, 1919. He died on August 20, 1920. J. H. McLean qualified as executor on August 24, 1920, and filed his inventory on October 21, 1920. The original bill was filed in this cause on November 4, 1920.

Taking the various assignments of errors presented by each interested party, altogether, and by summarizing them, it will be seen, that it is insisted by the widow, Mrs. Sue Fonda Scholze, that the court erred in not decreeing that she is the owner of the said seven Allison & Co., notes (1) because said notes were made payable to her and her husband jointly, it is contended, gave her a one-half interest, (2) because her husband had given her said notes and had delivered them to her, which made her the owner of the other half interest, and (3) because, in any event, she is the owner of all of said notes by right of survivorship as tenant by the entirety.

While, the complainant and the other defendants insist that the court erred in decreeing that she was the owner of a one-half interest in said notes, and was entitled to one-third of the residue of said estate as residuary legatee under said will. It being insisted by them that there was no gift, and no right of survivorship, and she having deliberately taken one position—that the notes were exclusively hers by gift and that the estate had no interest in them—she is thereby estopped to now assume an inconsistent attitude, and claim under the residuary clause of said will.

For convenience these assignments of errors will be treated altogether. The questions presented are:

(1) Is the widow entitled to said notes by the right of survivorship as tenant by the entirety? If not,

(2)   Did her husband give said notes to her? If not,

(3)   Is she entitled to a half interest in said notes, because she was joint payee? And if so,

(4)   Should that be treated as an advancement or an ademption of her share in the residue of the estate? and,

(5)   Is she estopped from claiming under the residuary clause of the will by reason of assuming inconsistent attitudes in this suit?

By far the most serious question in this suit, and one that has given us the most concern is, was tenancy by the entirety in choses in action recognized at common law and by the laws of Tennessee before the Act of 1919, chapter 126, emancipating married women? If it was recognized before said act, then it must still be recognized, as section 2 of said act provides: "That nothing in this act shall be construed as abolishing tenancies by the entirety, and as affecting the husband's right of curtesy."

We have made quite a painstaking investigation of the old English cases, and the cases on the subject decided by the Tennessee courts and by the courts of other states.

Most of the textbooks and Encyclopaedias say that the decided weight of authority is to the effect that estates by the entirety may exist in personalty, as well as in realty, and many cases are cited. See, 15 Am. & Eng. Ency. Law (2 Ed.), 851; 30 Corpus Juris, 575; 8 A. L. R. 1017; 13 R. C. L. sections 128 and 129, pp. 1105-1107.

And there are many cases in other states recognizing tenancy by the entirety in personalty.

Mr. Freeman in his work on Co-tenancy (2 Ed.), section 68, said that:

"On the other hand, the reports, English and American, new and old, abound in cases recognizing tenancy by entirety in all kinds of personal estate, and enforcing the right of the surviving husband or wife to the entire property."

And he criticises the statement of Bishop on the Law of Married Women, section 211, that "nothing of this sort is known in respect of personalty."

After an investigation of the old English and Tennessee cases, we think that neither author is strictly correct. Mr. Freeman is wrong in saying that the English cases recognize it as "tenancy by the entirety," and Mr. Bishop is wrong in his reasons given, as the "right of survivorship" in personalty as between husband and wife, has been recognized in England for a great many years. See Bricker v. Whatley, 1 Vern., 232   (23 Eng. Reprint, 435) decided on April 30, 1684; Coppin's Case, 2 P. Wms. 496 (24 Eng. Reprint, 832) decided in 1728; Atcheson v. Atcheson, 11 Beav., 485; Moffat v. Moffat, 18 Beav., 211; Ward v. Ward, 14 Ch. D., 306; 2 Williams on Executors (7 Am. Ed.), 56; 2 Jarman on Wills (6 Ed.), (1115) 266.

The right of survivorship in personalty was recognized in England as early as 1480. Where the husband and wife and another took property as joint tenants, the husband and wife took only one share as they were regarded as only one person. See Littleton's Tenures, sections 281 and 291. Coke upon Littleton by J. H. Thomas, 1827 Ed., Vol. 1, pp. 850-855. Bracton said: "Vir et uxor sunt quasi unica persona, quia caro una et sanguis unus." Tenancy by the entirety in land was not known as such until later, and it was then applied exclusively to lands and tenements, but "the right of survivorship" was applied to personalty. These estates grew up from necessity, as the estate of a husband and wife was not strictly a joint tenancy. A joint tenancy must be held by two or more people, whereas a conveyance to a husband and wife only, was, in law, a conveyance to only one person (they being considered as one) and each was seized of the entirety, hence, the name of "tenancy by the entirety." See 30 Corpus Juris, 564-574, secs. 97 to 106; 15 Am. & Eng. Ency. (2 Ed.), 847 to 850. There was a difference between joint tenancy and tenancy by the entirety. See Walker v. Grogan, 283 Fed., 534.

A similar rule was applied to personalty, but it was known as "the right of survivorship," as there could not be a tenancy of personalty. A tenancy is the state or condition of a tenant. The estate held by a tenant. "The word 'tenant' comes from the Latin word 'teneo, tenere,' which means to hold; hence, the word tenant means one who holds or possesses lands or tenants by any kind of title." "A 'tenement' means everything, which may be holden." See Bouvier's Law Dictionary; Anderson's Law Dictionary. Hence, the courts could not apply the term "tenancy by the entirety" to personalty, because the word "tenancy" applied only to lands and tenements.

The difference between tenancy by the entirety in land and the right of survivorship in personalty was that the husband could not sell or dispose of the land so as to defeat his wife's right of survivorship after his death, but at common law the husband became the owner of his wife's personalty upon marriage, and he had a right to reduce his wife's choses in action to possession, in which event, he became the absolute owner, and could dispose of the same and thus defeat her right of survivorship after his death, but if he died without reducing them to possession and without disposing of the property her right of survivorship remained. See Notes in 22 L. R. A., 594, and 8 A. L. R., 1018.

By the Act of 1784 (Shannon's Code, section 3677) the right of survivorship in all estates, real and personal, held in joint tenancy was abolished in Tennessee. But our Supreme Court held that this statute applied to technical joint tenancy only, and did not apply to tenancy by the entirety, because the husband and wife took one indivisible estate, which continued after the death of one spouse; that husband and wife were in the law, one person, and each was

seized by the entirety, and that, therefore, they were not technically joint tenants.    (See Taul v. Campbell, 7 Yerg., 319; Bennett v. Hutchens, 133 Tenn., 65.)

Our Supreme Court also held that this statute did not apply to choses in action payable to the husband and wife, or to the wife's property not reduced to possession, because the right of survivorship was recognized at common law, and because it was not a technical joint tenancy.    See McMillan v. Mason, 5 Cold., 263; Johnson v. Lusk, 6 Cold., 113; 1 Cooper's Chy., 3; Pile v. Pile, 6 Lea, 508; Pritchard on Wills & Admr., section 621.

Our Supreme Court said:

"Where an obligation is taken to husband and wife, such joint security or chose in action survives to the wife as against the personal representative of the husband.   It makes no difference whether the consideration of the chose in action passes from the husband or not.   The form of the security implies a design on the husband's part to benefit the wife, and the law will effectuate this design, while during her life time the husband might reduce this joint chose in action to possession just as he could the wife's individual chose in action, if he fails to make such reduction to possession during coverture, such security will survive to his wife.   These propositions are too firmly established to necessitate elaboration.   Johnson v. Lusk, 6 Cold., 113 (98 Am. Dec., 445); McMillan v. Mason, 5 Cold., 263 (98 Am. Dec., 401); Pile v. Pile, 6 Lea, 508 (40 Am. Rep., 50); 21 Cyc., 1197."   See Smith v. Haire, 133 Tenn., 343.

It will be seen, by an examination of all our cases, so far as we have been able to ascertain, that none of them holds that there may be a tenancy by the entirety in personalty.   They all speak of it as "the right of survivorship."

Now, if the right of survivorship in personalty was so different at common law as that it could not be what is technically a tenancy by the entirety because the wife was not possessed of the entirety, then it follows that both could not be the same thing, as one applied to personalty and the other applied to realty.

Tenancy by the entirety was abolished by the Act of 1913, chapter 26, emancipating married women, and a married woman then could hold and dispose of her property the same as if she were a feme sole, and the husband and wife could no longer be considered as one in so far as their property was concerned.   Gill v. McKinney, 140 Tenn., 549; Bank v. Loomis, 147 Tenn., 158.   It necessarily follows that the right of survivorship in personalty was also abolished by said act.

Since then, said act has been repealed, in 1919, and another act containing the same language, emancipating married women, has been enacted, with the provision "that nothing in this act shall be

construed as abolishing tenancies by the entirety,'' etc., as herein-above set out. See Act 1919, chapter 126. Evidently the original act was repealed and the latter act enacted for the purpose of preserving tenancies by the entirety and the husband's estate by the curtesy.

Now the act having empowered married women to hold, possess and dispose of their property as if single necessarily abolished tenancy by the entirety and the right of survivorship in personalty, unless preserved by the saving clause in section 2 of said act. So, we are of the opinion that this section applies to tenancy by the entirety in land, and not to the right of survivorship in personalty.

It is an established rule in the construction of statutes that words with a fixed meaning at common law, or by decisions of the court, are presumed to be used in a statute later enacted in the same sense and with the same meaning that they had at common law or in such decisions, unless a different sense is apparent from the context or the general purpose of the statute, or unless expressly defined by statute. Lively v. Zinc Co., 137 Tenn., 261; Apple v. Apple, 1 Head., 348; 36 Cyc., 1145.

Since said act, the husband cannot reduce his wife's choses in action to possession (Tellico Bank v. Loomis, 147 Tenn., 158; Pattison v. Baker, 148 Tenn., 399), except those undisposed of at her death. (Baker v. Dews, 133 Tenn., 126.) Hence, we think that said act entirely abrogated the common-law disability of the wife, and gave her the rights of an unmarried person. Since then, neither she nor her husband has a right of survivorship in personalty as the exception in said statute does not apply to personalty held by them jointly as husband and wife. See Gill v. McKinney, 140 Tenn., 550.

We are of the opinion that tenancy by entirety in personalty never existed at common law, and that the right of survivorship in personalty was not preserved by section 2 of chapter 126 of Act 1919, therefore, the widow did not take said notes as survivor of her husband; and we affirm the Chancellor on this proposition.

We have arrived at this conclusion in the face of a previous holding by the Court of Civil Appeals in another case—Bellar v. Ferrell, Smith County Equity, decided at Nashville in 1923, which case was not reviewed by our Supreme Court. After a review of the cases we think that opinion should be overruled.

However, the widow, Mrs. Scholze, insists that she owns said notes and that she became the owner of a half interest as joint payee, and the owner of the other half by gift consummated by actual delivery to her.

She insists that after Allison &- Company had executed said notes they were delivered to her husband and that he counted them and turned them over to her and told her that they were hers. That he instructed her to keep them securely; that she took these notes and

put them in an envelope, together with her diamond ring, and carried them to the bank and put them in a safety deposit box and kept the key; that the box had been previously rented by her husband from the First National Bank at Chattanooga, but she paid the rent thereafter, and that the notes remained in said box together with some of her husband's valuable papers until after his death, when she went to the bank, and in the presence of the executor and her attorney, she unlocked the box and turned over her husband's papers to the executor, but took possession of the notes and has retained them ever since. She admits that the administrator demanded the notes and later wrote her a letter demanding the notes but that she refused to give him possession of them as she claimed them as her own.

The said notes were made payable to "E. W.. and Sue Scholze." Mr. McLean, the executor, drafted the will, deeds and notes for the decedent, and testified that he had drafted the notes as directed by the decedent.

Mrs. Mattie Lee Blevins testified that the decedent said, in a conversation sometime after the Allison & Company deal; "I had these notes made to E. W. Scholze and Sue F. Scholze, and I have given those to mama; she has them."

Dr. H. D. Davis testified that he was the family physician and that the decedent said to him: "Harry, I have sold my interest in the ice plant, have some notes drawing interest, the interest off these notes will take care of me and mama, and when I die, they will take care of mama, because they are hers."

Mrs. Lottie Boyce, a sister of the widow, testified that she heard a conversation between the decedent and the complainant just after the Allison & Company transaction, in which the testator said:

"Well, what do you want? Well, if you want the money from the ice factory, you can't have a damned cent of it; that's mama's and mine."

Mr. J. B. Fonda, the father of the widow, an old gentleman, 90 years of age, who lived with E. W. Scholze and his daughter for a number of years prior to his death, testified that he had heard two conversations, one just after the Allison & Company transaction and the other on the day before he died. He states:

"He was in his wheel-chair, and I stood beside him rubbing his arm, and I could see all over his lap. He could not handle his right hand at all, he handled everything with his left arm, he spread the notes out on his lap, right in my sight, right where, I could see them, and spread them and counted them over and he says 'seven, there are seven ten thousand dollar notes.' Well, I could see for myself that that is what it was. He took them notes and rolled them up and put them in an envelope he had,

and he always called his wife 'mama,' she was right on the other side of him sitting on the edge of the bed, and just at that time she took a notion she wanted to go into the kitchen for something, or outside, and she got up to start to go out, and he says 'mama.' She very quickly responded to everything he called for, very quick, and she come right back, and he says 'here, take these notes and put them under lock and key, and you keep the key, you keep the key.' She says 'all right, I will do so.' So she went off about her business and of course, he—I waited on him whatever he asked for.''

He further testifies that he heard a conversation between the decedent and his son, Henry Scholze, the complainant, in which the witness says:

"Henry demanded him to give him the whole thing plumb out, and he didn't say anything for a minute. Finally, 'Henry' says he 'I give you a good setting up for business and I am not going to give you everything. I want something for myself.' Yes, of course, I do not want to say anything to hurt anybody in the world but I could say a good deal.''

He further testified to another conversation on the day before the testator died, as follows:

"And she (the widow) would take him by the shoulder and I would take him by the legs, and turn him over as carefully as we could, and keep turning him over and finally he came over and sort of rested easy like all at once, and he says 'that is funny.' He stopped and she started to get up and walk off, and he says 'mama' says he, 'you have got them notes all right under a lock and key?' 'Yes.' Says he 'you keep them, and you keep the key,' and so it was just as plain as daylight, like it was yesterday, and I was right at the foot of the bed all the time he was on it, helping to turn him over.''

He was then asked if anything further was said about it. He replied:

"Never said a word that I can remember of. I don't think he opened his mouth after that. I thinks 'now, he is not going to die right now is he?' I looked at him, he looked the same as usual pretty near, only quiet, perfectly quiet.''

He was again asked to state if anything further was said about the notes being Mrs. Sue Fonda Scholze's. His reply was:

"He said they were Mrs. Sue Scholze's that is 'mama's.' ''

He was again asked to repeat the language, and he replied:

"He always called her mama and he said 'mama, these are your notes, you keep them, keep them locked up and secure. I give you these notes, I give them to you, so they are your notes.' ''

On cross-examination he attempts to repeat this conversation and said:

"Those two or three words was, he seemed to be moody over something, laying perfectly quiet and Sue started to go out like she was going out of the door, and he says 'Mama, come back here.' She came back. Says he 'have you got them notes all right?' Says she, 'I have.' Says he 'you take care of them. You keep them under a lock and key and keep the key. I give you them notes. I give you my—give you them notes.'"

The counsel on cross-examination said: "I thought he gave the notes to Sue at the time the trade was made?" He replied:

"He didn't, he gave them to her providing he didn't live, understand, providing he didn't live he gave her the notes."

Reviewing all of the testimony on the question of gift, and taking all of these conversations together, we do not think that the widow has established the fact that the notes were given to her and that the gift was consummated. A delivery and an intention to give must accompany each other in order to make a valid gift. The burden of proof as to the validity of the gift, is on the donee and this is especially true where the gift is asserted after the death of the alleged donor. Mere declarations of gift by an alleged donor are not sufficient to establish delivery, and of course, possession by the donee is not entitled to weight as evidence. All these questions were gone over and thoroughly reviewed in an able opinion by Judge Smith in the case of Atchley v. Rimmer, 148 Tenn., 303, (30 A. L. R., 1481), and we think that the principles laid down in that case are applicable to this case, and it is unnecessary for us to go into further detail on the subject. As stated in that case, two things must concur in order to make a valid gift, that is, "delivery and intention to give must accompany each other to make a valid gift," and both must be established by clear, ample and convincing evidence. If there are any strings tied to the gift which show that the donor did not actually intend to make the gift, then the gift is not consummated. An intention to give without an actual delivery is not sufficient. While on the other hand, delivery alone does not constitute a gift in the absence of an actual intention to part with the title of the property.

Now, applying these principles to the present case, we find that the testator took these notes in the joint names of himself and his wife. After delivery to him, he turned them over to his wife with the declarations hereinabove set out, and she took possession of them, as above stated. We think the conversations and his declarations and delivery are entirely consonant with his first intention when he directed that the notes be executed to himself and wife, and that is, that he intended for his wife to have a half interest in said notes. Taking the notes alone, without any extrinsic proof, the wife is en-

titled to a one-half interest, provided, there was a delivery to her. The form of the security implies a design on the husband's part to benefit the wife and the law will effectuate this design. See Smith v. Haire, 133 Tenn., 343; Pile v. Pile, 6 Lea, 509; Johnson v. Lusk, 6 Cold., 113; 1 Cooper's Chy., 3.

However, it is insisted by complainant and the other defendants that since the Emancipation Act, the husband and wife are to be treated as two separate individuals and on the same plane as strangers; and where one conveys property but takes a note in the joint names of a husband and wife, a father and son, or in the names of the grantor and a stranger, this evidences an intention to give the other party a half interest, but the gift is not consummated without delivery, as there is no consideration, and they cite the cases of Tobin v. Tobin, 139 Wisc., 494; Fanning v. Russell, 94 Ill., 393.

In the view we take of the evidence, the gift was consummated by delivery to her and she is therefore entitled to half interest in said notes, and we, therefore, affirm the Chancellor on this proposition.

The next question raised by the different assignments is whether the half interest in these notes should be treated as an advancement or an ademption of her share in the residue of the estate.

It may be stated that there are other assignments of error made by the executor and other defendants, in which they insist that the court erred in decreeing that complainant, Henry A. Scholze, was entitled to one-third of the residue of the estate under the will, and in which they contend that the property conveyed to him by his father on December 31, 1919, was a settlement in full of his share in the said estate, or at least they insist that the Chancellor should have decreed that it was an advancement and an ademption pro tanto.

As all of these assignments of errors, both as to the widow and as to the complainant, Henry A. Scholze, discuss the doctrines of advancement, ademption and satisfaction, we will treat of them together.

At the outset, we will say that we do not think that the doctrine of advancements as prescribed by our statutes, Shannon's Code, sections 4174 to 4176, has any application to a case of total testacy. "Where the will itself disposes of the entire estate and directs its disposition, the collation of advancements is made impossible unless the same is provided for in the will. See Bank v. Demarchi, 2 Hig., 301."

But the question of ademption presents a much more serious proposition, and is one that has given us some concern. But, after a careful examination of all the authorities cited by counsel, and such other authorities as we had access to, we are of the opinion that the doctrine of ademption should not be applied to either the widow or the complainant, Henry A. Scholze. Under the decisions of our Supreme Court the presumption of satisfaction or ademption will not prevail

(1) where the testamentary portion and the subsequent advancements are not of the same nature; (2) where the latter depends on a contingency and the former is certain; (3) where either is in lieu of, or a compensation for an interest to which the child is entitled independently of the will; or (4) where the bequest is of a residue or part of a residue. See, Pritchard on Wills and Administration, sec. 463; Clark v. Jetton, 5 Sneed, 229; 40 Cyc., 1917; Notes in 1 L. R. A., 203; Davis v. Whitaker, 38 Ark., 435.

"All authorities, we believe, agree that where the gift, by a will and the subsequent portions advanced, or property conveyed, are not ejusdem generis, the presumption of such, will be repelled, or will not arise, and nothing more appearing, the legacy will be payable." See Evans v. Beaumont, 4 Lea, 599; Notes in 38 L. R. A. (N. S.), p. 591; 40 Cyc., 1916.

However, it is insisted that the judge who rendered the decision in Clark v. Jetton, supra, really thought that the application of the rule that ademption did not prevail as against a residuary bequest was unjust, and that decision was based upon an old English case which had been later overruled as stated in 2 Williams on Executors (7 Am. Ed.), p. 646. But after an examination of all these authorities, we are convinced that the decision in the case of Clark v. Jetton, supra, was based on the right principles and that it is still the law in Tennessee. It is the last case on the subject in Tennessee, and we must take the law as we find it. To enter into a detailed discussion of the authorities on this subject would extend this opinion to repellent length. We need only say that we have given careful consideration to the opposing arguments and cases, and after a careful study of the subject, we are satisfied that the assignments of error as to both the widow and complainant on these questions are not well made. The property conveyed to Henry A. Scholze was not strictly a gift, as he assumed the indebtedness of the various plants known as current accounts. The proof showed that the property conveyed to him was worth about $19,000 and the debts paid by him amounted to something over $7,000.

However, it was insisted by the appellants that the residuary clause of the will was not strictly a residuary clause as the property to be sold and converted into money was set out in detail in said clause. We do not think that this contention is well made, as merely enumerating some of the articles contained in the residuary clause does not alter the character of the legacy. The clause begins with the statement: "All the rest, residue and remainder of my estate, etc."

This clause provides that the testator's debts, taxes, cost of administration, and certain specific bequests be paid out of the proceeds of the property and that the remainder be divided into three parts.

This shows that it is the rest, residue and remainder of his estate that is bequeathed to these parties. The amount is uncertain. It may be considerable or nothing, but as before stated, merely enumerating some of the articles in the residuary clause does not and should not alter the character of the legacy. See Martin, Petitioner, 25 R. I. 18.

It is next insisted by complainant that the widow is estopped from claiming under the residuary clause of the will by reason of assuming inconsistent attitudes in this suit. In other words, the widow had claimed to be the absolute owner of these seven notes, both by gift and by right of survivorship, and that she having deliberately taken this position in the pleadings, in which she insisted that they were exclusively hers by gift and that the estate had no interest in them, she should be estopped to now assume an inconsistent attitude and claim under the residuary clause of the will. After an examination of the pleadings and the record on this point, we are satisfied that she has not assumed any position that is inconsistent, under the circumstances, as would preclude her from taking under the residuary clause of the will, and we think there is nothing in this proposition. Hence, this assignment of error must be overruled. See Martin v. Lincoln, 4 Lea, 289.

The executor and other defendants contend that the court erred in decreeing the two notes of $833.33 for the Georgia farm to complainant, it being insisted that said notes were not assigned or transferred to him by the deed conveying the fertilizer plant, soap factory and property mentioned in the deed.

As before stated, these notes were taken as part payment for the Georgia farm. The Georgia farm was conveyed to the deceased in 1914 in payment of a fertilizer account. After the sale of this farm in November, 1919, the two notes were placed with the other notes in the office of the fertilizer plant, and were carried on the fertilizer books as other accounts, and the deceased never asserted any claim to these notes more than to other fertilizer notes.

The deed from E. W. Scholze to Henry A. Scholze, after conveying certain property, recites:

"Also, all the cash on hand, notes, accounts, and claims of every kind and nature outstanding in my favor on account of the business done by me under the head of ice business, fertilizer business, and soap business, as above stated."

Now, without a further discussion of the proposition, we are of the opinion that these two notes were a part of the fertilizer business and were conveyed to complainant in said deed. Hence, the assignments of error on this proposition must be overruled.

The complainant insists by assignment of error, that the court erred in decreeing that the half interest in the Allison & Company

notes should be paid to the executor. He insists that the executor was derelict in his duty in that he did not attempt to properly protect the interest of the estate, that he was in collusion with the widow; that she took the notes from the lock box under "the friendly eye of the executor," and that he took no steps to regain possession of the notes or to enjoin her disposition of them; that he did not file his inventory and reports within the time required by law; and for these reasons the estate should be administered in this court and that he should be removed.

By an examination of the original bill, it will be seen that the court was not asked to remove the executor; and there are no allegations or charges made in the bill to justify the court to take such action should the facts warrant it. The bill was not filed with the point of his removal in view. We have made a careful investigation of the record, and fail to find any facts that cast any reflection upon the executor. He may have been somewhat friendly to the widow, but his actions did not show that he let his friendship for her interfere with his duties as executor. The testator died on August 20, 1920. The executor qualified on August 24, 1920. The will was read a few days thereafter, and the executor made demand on the widow for the notes and a demand on the complainant for the two notes held by him. He filed his inventory on October 21, 1920, and the original bill in this cause was filed by complainant on November 4, 1920, and the estate has been in litigation ever since, but no attempt has been made to surcharge and falsify his inventory; hence, we think that this assignment is without merit and must therefore, be overruled.

The executor assigns as error that the court erred in decreeing that the estate should be transferred from the county court to the chancery court and administered and settled in this cause.

In the original bill it was sought (1) a construction of the will, (2) to restrain the transfer of the notes by the widow and (3) to finally settle the estate in the chancery court. The executor filed a cross-bill and asked for affirmative relief and a reference to ascertain "how much of the estate will remain for distribution after the payment of the debts, costs and expenses, and to that end let him report the debts of the estate, together with the probable amount of costs, compensation of the executor, and his attorneys." In other words, while the executor denied that a construction of the will was necessary, yet he in effect asked the court to settle the rights of the parties.

Chancery courts have jurisdiction for the purpose of construing wills. (See Pritchard on Wills and Administrations, secs. 381 to 383; Gibson's Suits in Chy. (2 Ed.) sec. 929). Chancery court has jurisdiction of the collation of accounts for advancements. (Pritchard on

Wills & Adm., sec. 772). Where letters of administration have been granted and it is made to appear that the legal right to receive the assets are being abused or likely to be abused so that the assets will be lost or wasted, chancery court may interfere and take the assets out of the hands of the incumbent. (Pritchard on Wills and Administration, secs. 570, 594; Roberson v. Roberson, 3 Lea, 50). Chancery court also has jurisdiction for an accounting and settlement of the estate by a creditor and distributee against the personal representative, where the representative colludes with the debtor. See, Pritchard on Wills and Administrations, sec. 726, and authorities cited. Chancery court also has jurisdiction in cases of express trusts, among them being administrators, executors, guardians, and public officers. See Gibson's Suits in Chancery, sec. 926.

An executor and testamentary trustee may cause administration to be transferred to the chancery court at any time, by a bill for that purpose, seeking the construction of a will, though it need no construction, and the trust be plain and unambiguous and the necessity for administering in chancery does not appear. See Vaccaro v. Cicalla, 5 Pick., 63.

In cases of this kind, the filing of an answer is a waiver of objection to the jurisdiction of the court. The jurisdiction of the chancery court can be resisted only by plea in abatement, demurrer or motion to dismiss, and not by answer. See Shannon's Code, secs. 6129 and 6131. The executor did not properly raise the question. However, we are of the opinion that the Chancellor was correct in ordering the administration of the estate to be transferred from the county court to his court, there to be administered and settled. It would be inconvenient and more expensive for it to be settled up in the county court. Hence, it results that this assignment of error must be overruled.

It results that all the assignments of error are overruled, the decree of the special Chancellor is affirmed, and the cause is remanded for further proceedings in accordance with this opinion. The cost of the cause, including the cost of the appeal is adjudged against all of the appellants and the sureties on the appeal bonds; that is the complainant will pay one-third, the widow one-third, and the Ramsey Heirs one-third, for which execution may issue.

Faw, P. J., and DeWitt, J., concur.